63 So.2d 769 (1952)
BOWLES et al.
v.
ELKES PONTIAC CO.
Supreme Court of Florida, Special Division B.
December 19, 1952.
On Rehearing March 10, 1953.
*770 Paul Kickliter and Benjamin C. Sidwell, Tampa, for appellants.
Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellees.
DREW, Justice.
The lower court sustained a motion to dismiss plaintiffs' amended complaint on the authority of Matson v. Tip Top Grocery, 151 Fla. 247, 9 So.2d 366, 368. The plaintiffs declined to further amend, final judgment was entered against them and they appealed.
The pertinent portions of the amended complaint, which charges negligence, are as follows:
"1. That on or about the 15th day of November, A.D. 1951, the Defendant was and still is in exclusive possession and control of certain lands and premises in the City of Tampa, County of Hillsborough, State of Florida.
"2. That at said time there was erected upon said premises, a one story building with a showroom on the ground floor, and that said showroom was at said time in the exclusive possession and control of the Defendant, and was at said time being maintained and operated as a showroom, open to the public, for the exhibition and sale of certain Pontiac automobiles, by said Defendant.
"3. That one entrance to the said showroom is obtained by way of a door leading from an adjoining gasoline service station, operated also by Defendant, said door being designated by a sign above it as `entrance', `salesroom and general office.'
"4. That the said Defendant disregarding its duty to maintain its showroom premises in a reasonably safe condition for its customers, lawfully coming therein, negligently and carelessly constructed and maintained the above described entrance leading to and from said showroom in a dangerous and defective condition in that the said door entrance was constructed with a dangerous, unsafe and obscure drop-off being approximately eighteen (18) inches inside the entrance, said drop-off being approximately three (3) inches in depth; that the entrance, drop-off and surrounding floor were on said date, all constructed and maintained of the same color floor material, which, coupled with the slight size of the drop-off, combined to present a hidden *771 and dangerous defect so that one in the reasonable exercise of his ordinary sense cannot distinguish the abrupt change in floor-level or discern the aforementioned drop-off, and that Defendant, in addition, negligently failed to provide any caution sign, handrail, floor mat, or other method to put one on notice that the floor level dropped off abruptly less than one step inside the door.
"5. That on the said day and for a long time prior thereto, the Defendant had actual knowledge and notice of the defective, dangerous and obscure condition as aforesaid of the said entrance, on its premises, as hereinbefore described, or that it should have had knowledge and notice of such condition of said entrance.
"6. That the negligence and carelessness of the said Defendant consisted in constructing and maintaining the said entrance in the defective, obscure and dangerous condition as hereinbefore described, in paragraph four, and in failing to warn the Plaintiff by signs or other appropriate methods, of the dangerous, obscure and unsafe condition existing at said entrance."
We fail to see the similarity between the allegations in the declaration of the Matson case, supra, and the allegations in the complaint in this case. In the former the platform and the lunch counter were visible and obvious and the plaintiff in that case had clearly observed the very conditions which she alleged caused her injury. In the instant case, the complaint alleges that the drop-off in the floor level near the door presented a hidden and dangerous defect and alleged facts which, if true, tended to support the averment. In the Matson case Mr. Justice Adams, in speaking for this Court, said:
"Such construction, when within reason, is not a breach of duty in the sense of failure to use due care for the safety of those invited upon the premises. It naturally follows then, that there is no duty to warn of an obvious condition which is not in itself dangerous. It is to be observed that we are not dealing with a hidden danger." (Emphasis supplied.)
The above quotation from the opinion so clearly differentiates this case that further comment would be superfluous.
The appellee cites many cases of this Court where we have held that the owner of premises is not liable to an invitee for "approved conditions that are plainly observable." The very crux of this case, however, is whether the condition complained of in the complaint was in that category. The whole matter boils down to the question of whether, under the circumstances set forth in the complaint, the defendant exercised ordinary care to protect its patrons from injury. We hold that under the circumstances related in the complaint this was a matter to be decided by a jury under appropriate instructions from the Court. Mertz v. Krueger, Fla., 58 So.2d 160; Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720.
For the reasons herein stated the lower court erred in sustaining the motion to dismiss the amended complaint and in entering a judgment for the defendant.
Reversed.
TERRELL, Acting Chief Justice, and HOBSON, and MATHEWS, JJ., concur.

On Rehearing.
MATHEWS, Justice.
The appellee operated and maintained an automobile sales and showroom. The declaration alleged the showroom was in a dangerous and defective condition because there was an unsafe and obscure drop-off 18 inches inside the entrance door and approximately 3 inches in depth. The declaration further alleged that the entrance, surrounding floor and the drop-off were constructed and maintained with the same color floor material and that this fact, coupled with the slight drop-off, made the same a hidden and dangerous condition. Appellant did not allege that she did not see the drop-off or that she was looking at the floor or where she was stepping as she entered the door and went into the showroom. *772 She alleged that there was no sign, handrail, or floor mat to put one on notice that the floor level dropped off abruptly. This showroom was next to a sidewalk or pavement adjacent to a filling station on the outside, which was also conducted by the appellee.
In the case of Earley v. Morrison Cafeteria Co. of Orlando, Fla., 61 So.2d 477, 478, the complaint was that the defendant maintained a rubber or leather mat, 4 feet wide and 5 feet long, which was between 1/4 and 1/2 inch thick. Plaintiff alleged that this mat was an extreme hazard. One theory was that the mat being only 1/4 to 1/2 inch in thickness made it a hidden danger. This court said:
"* * * the danger was not latent or concealed, but patent and obvious, and the ordinary use of her senses by the appellant would have disclosed it to her."
In the case at bar the appellants complain there was no mat and the drop-off being 3 inches thick, coupled with the fact that the color was the same as the rest of the floor, constituted a hidden danger. The danger should be more "patent and obvious" with a 3 inch drop-off, than a mat 1/4 to 1/2 inch thick.
It was the duty of the invitee to see that which would be obvious to her upon the ordinary use of her senses. It was the duty of the appellant to exercise a reasonable degree of care for her own safety.
In the case of Matson v. Tip Top Grocery Co., 151 Fla. 247, 9 So.2d 366, 368, this Court said:
"* * * The duty which the plaintiff owes to herself is to observe the obvious and apparent condition of the premises."
See also Miller v. Shull, Fla., 48 So.2d 521; MacMillan v. Insurance Exchange Building, Fla., 58 So.2d 163; Andrews v. Narber, Fla., 59 So.2d 869.
The allegation of the complaint that the drop-off was 3 inches in depth and was 18 inches inside the showroom from the door entrance, made the dangerous condition more obvious than a 1/2 inch thickness of a rubber or leather mat.
The allegation that the color of the platform drop-off and floor of the showroom was the same and this fact, coupled with the 3 inch drop-off, made the situation dangerous, contains no merit. It is a matter of general knowledge that there are multiple steps in hotels, restaurants, storerooms and other business establishments throughout Florida with the same color as that of the floor. Even the sidewalks and the drop-off from such sidewalks to the streets have the same color as the streets in thousands of instances throughout Florida.
Any person of ordinary intelligence entering a door to a building or a showroom, such as that shown in this case, has the duty and obligation to use ordinary care for his own safety and to look and see where he is going. There is no allegation in this complaint that the plaintiff looked, or took any other precaution, to see the condition which existed before she entered.
For the reasons stated, we recede from the former opinion reversing the judgment, and the said judgment should be and is hereby
Affirmed.
THOMAS, SEBRING and ROBERTS, JJ., concur.
HOBSON, C.J., TERRELL and DREW, JJ., dissent and adhere to original opinion.