595 So.2d 1062 (1992)
Marsha GORIN, et al., Appellants,
v.
CITY OF ST. AUGUSTINE, Florida, Etc., et al., Appellees.
Nos. 90-1128, 90-1231.
District Court of Appeal of Florida, Fifth District.
March 13, 1992.
Edward A. Perse of Perse, P.A. & Ginsberg, P.A. and Carroll & Halberg, P.A., Miami, for appellants.
William M. Corley and Clifford C. Higby, Jacksonville, for appellee City of St. Augustine.
Scott A. Cleary of Williams & Shad, P.A., Jacksonville, for appellee Lightner Museum.
EN BANC
PETERSON, Judge.
Marsha Gorin and her husband, Martin, appeal the summary judgment entered in favor of the defendants, two separate entities, City of St. Augustine and Lightner Museum, a Florida corporation not for profit. The Gorins brought the action as a result of injuries Marsha sustained in a fall when she stepped down from a sidewalk to a roadway. We affirm.
On August 28, 1986, Mr. and Mrs. Gorin boarded a tram for a tour of St. Augustine tourist sites, one of which is the Lightner Museum. The city provides a semicircular driveway at the front entrance of the museum to eliminate obstruction to traffic on a main thoroughfare. A sidewalk, also provided by the city, abuts the driveway and requires a step up to the sidewalk. The sidewalk and the driveway surfaces are of a similar, if not the same, coloration. The Gorins arrived at the museum, disembarked the tram, toured the museum, and began the walk back to the tram on much the same route that they had followed upon their arrival. When Mrs. Gorin arrived at the point where the sidewalk dropped to the level of the driveway, she fell. Later, she testified while being deposed that, although she was watching where she was going, she did not see the change in elevation nor the curb located approximately five or six feet from the tram.
In addition to these facts, the evidence before the trial court at the hearing on the motion for summary judgment included a report that a driver for the company operating the tram told Mrs. Gorin that she had seen four or five persons fall off the curb and had reported it to someone at the museum. In a deposition, the driver indicated that she had observed the falls during the two years and three or four months that she was employed as a driver and had reported only one incident to the museum. That incident involved the simultaneous fall of two women who were looking at the tram rather than at the sidewalk. She also indicated that the reason for the incidents *1063 is that persons waiting for the tram become excited when they see the tram arriving and they fail to look where they are walking. Mrs. Gorin specifically testified that she was watching where she was walking and did not see the curb. Another driver indicated in a deposition that on a busy day approximately one thousand passengers would board the tram. The Gorins had filed an affidavit of an engineer which indicated that the "lack of delineation between the steps for the sidewalk/street and tram areas creates an optical illusion with conflicting and confusing feedback particularly to pedestrians in a vacational and recreational mood." The engineer further opined that this was an inherently and unreasonably dangerous situation, that warning signs or yellow striping should be available, and that, had these warnings been present, the accident would not have occurred. The Gorins conceded that there was no foreign substance or "break" in the curb that contributed to the fall. The surface was dry and Mrs. Gorin's path was unobstructed. The city manager testified in his deposition that curbs within the city are not marked except for parking restrictions, that the city built and maintained the curbs, and that Lightner Museum had no responsibility to do so.
The Gorins alleged that the City of St. Augustine was negligent in maintaining an unsafe curb that was not adequately painted or marked. The trial court relied on Aventura Mall Venture v. Olson, 561 So.2d 319 (Fla. 3d DCA), review denied, 574 So.2d 142 (Fla. 1990), in granting the defendants' motions for summary judgment. Aventura involved a slip and fall from a six-inch sidewalk curb. The plaintiff alleged in that case that the curb was negligently designed and maintained because it had not been painted yellow to warn of the change in elevation. Although the trial court entered judgment for the plaintiff after a jury verdict, the Third District reversed, finding no inherent danger in the color of the curb blending with the color of the driveway below. The court quoted from an earlier Florida Supreme Court opinion, Bowles v. Elkes Pontiac Co., 63 So.2d 769, 772 (Fla. 1952), that "[i]t is a matter of common knowledge that `the sidewalks and the drop-off[s] from such sidewalks to the streets have the same color as the streets in thousands of instances throughout Florida.'" 561 So.2d at 320.
The facts in this case are strikingly similar to those in Aventura in that curbs, if painted, were for traffic control only; the weather was clear; the lighting was adequate since the event took place during daylight hours; there was no foreign object on the surface; and the curb was plainly visible. The Aventura opinion also cited Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473 (Miss. 1967), in which that court concluded that a step-off from a sidewalk curb was not inherently dangerous although the plaintiff testified that "it just looked like one big solid slab of concrete, all on the same level." Aventura is also consistent with our earlier decision in Circle K Convenience Stores, Inc. v. Ferguson, 556 So.2d 1207, 1208 (Fla. 5th DCA 1990), where we stated, "Some conditions are simply so open and obvious, so common and so ordinarily innocuous, that they can be held as a matter of law to not constitute a hidden dangerous condition." We also agree with the Third District that "to hold that an ordinary sidewalk curb, without more, is inherently dangerous would make every municipality and business establishment the virtual insurer of the safety of every pedestrian." Aventura, at 321. Given the high traffic of passengers boarding the tram, some will fall no matter what color the curb might be, especially when the passengers are looking at the tram rather than where they are walking as was the case in the previous incidents witnessed by the tram driver.
The Gorins cite Bryant v. Lucky Stores, Inc., 577 So.2d 1347 (Fla. 2d DCA 1990), to support their contention that summary judgment should not have been entered for the defendants. The plaintiff in Bryant was injured as she stepped from the sidewalk to the driveway below. She happened to choose the point of descent where a speed bump had been constructed on the driveway below, causing an uneven surface upon which to step. The Second District *1064 reversed the summary judgment after determining that a factual question was raised as to whether, when considering all circumstances, the plaintiff should have seen the speed bump. Neither the curb nor the descent was an issue; the issue was whether the defendant should have seen the uneven surface, the speed bump, at the termination point of her descent. In the instant case, the surfaces of both the sidewalk and the roadway were even.
The summary judgment in favor of the City of St. Augustine and Lightner Museum is affirmed.
AFFIRMED.
GOSHORN, C.J., DAUKSCH, COBB, COWART, HARRIS, and DIAMANTIS, JJ., concur.
W. SHARP, J., dissents with opinion.
GRIFFIN, J., dissents with opinion in which W. SHARP, J., concurs.
W. SHARP, Judge, dissenting.
I respectfully dissent. Although this is a close case, when in doubt as to whether or not there is a material question of fact in reviewing a summary judgment, the appellate court should give the benefit of the doubt to the nonmoving party,[1] and allow a jury to resolve the issue. I concurred with a proposed opinion written by Judge Sawaya, an associate judge sitting with the original panel. I adopt and incorporate it in this opinion because it states the record and issues fully and accurately and demonstrates why the facts, taken most favorably to the plaintiffs, do not create such an open and obvious condition as to render the configuration of the curb and sidewalk not inherently dangerous as a matter of law.
It reads:
"The plaintiffs, Marsha Gorin and her husband Martin, appeal an order on motion for summary judgment entered in their personal injury lawsuit in favor of the defendants, City of St. Augustine and the Lightner Museum. This case originated on August 28, 1986, when Mrs. Gorin fell outside the Lightner Museum, injuring her elbow and leg. The museum is owned by the City of St. Augustine. On that date, Mr. and Mrs. Gorin and their grandson took a tour of St. Augustine on a train operated by St. Augustine Trains, Inc., which remains a defendant in the trial proceedings. The train picked them up and dropped them off at various tourist sites, including the Lightner Museum. Mrs. Gorin disembarked at the museum without incident, completed a tour and returned outside to reboard the train. While walking toward the train, Mrs. Gorin missed a step over a curb and fell, sustaining injuries. Mrs. Gorin testified that she was watching where she was going but was unaware of the curb and did not see any change in levels."
"Mrs. Gorin fell at a location in front of the museum where the trains discharge and pick up passengers. A semicircular driveway abuts the sidewalk in this location and the trains drive into this driveway and park as close to the sidewalk as possible. There is a drop-off from the sidewalk curb to the driveway which is maintained by the City of St. Augustine. The sidewalk, curb, and driveway are all the same color and there are no markings to distinguish the change in levels. Four or five other women have fallen on prior occasions in the same location and in the same manner as Mrs. Gorin. These incidents were reported to the defendants prior to Mrs. Gorin's accident."
"The lower court concluded that the defendants had not breached any legal duty owed to Mrs. Gorin as an invitee and were, therefore, not negligent. The court reasoned that the condition on the premises which caused Mrs. Gorin's injury is open and obvious and does not constitute an inherently dangerous condition as a matter of law. We reverse."
*1065 "Negligence is commonly defined as the failure to use that degree of care, diligence and skill that is one's legal duty to use in order to protect another from injury. Miriam Mascheck, Inc. v. Mausner, 264 So.2d 859 (Fla. 3d DCA 1972). As an essential element of any negligence action, the plaintiff must establish the existence of a duty recognized by law which requires the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks. Westchester Exxon v. Valdes, 524 So.2d 452 (Fla. 3d DCA 1988); Florida Power and Light Company v. Lively, 465 So.2d 1270 (Fla. 3d DCA), rev. denied, 476 So.2d 674 (Fla. 1985). The issue of whether a legal duty exists is for the court to decide as a matter of law. Id. Whether that duty was breached is an issue to be decided by the jury unless only one reasonable conclusion may be drawn from the evidence. Lively, 465 So.2d 1270."
"There are few areas in the law of negligence in which the concept of duty has been more significant in determining civil liability than the area of premises liability. Largely based on the judicially perceived need to balance proprietary rights and interests (those privileges accorded the landowner to use his property as he desires) with the necessity of protecting others from unreasonable harm that may be caused by the unrestrained use of property, various duties of care are imposed on landowners and occupiers. The extent of the duty of care depends upon the cause of the harm and, in appropriate cases, the status of the entrant. If the harm is caused by the active conduct or personal negligence of the landowner, his duty is to exercise reasonable care to prevent harm to third parties. Maldonado v. Jack M. Berry Grove Corp., 351 So.2d 967 (Fla. 1977); Hix v. Billen, 284 So.2d 209 (Fla. 1973); Seaboard System Railroad, Inc. v. Mells, 528 So.2d 934 (Fla. 1st DCA 1988). However, as in this case, when it is alleged that the injury was caused by an inherently dangerous condition on the premises the status of the injured party determines the duty owed. Id. The three categories of entrants in the order of decreasing status are invitees, licensees, and trespassers. The corresponding duty and, therefore, the potential liability of the landowner or occupier decreases as the status of the entrant decreases.[1] Under the facts of this case Mrs. Gorin occupies the status of an invitee. This requires the owner or occupier to exercise the highest duty of care owed to any of the three categories of entrants. The defendants thus owed Mrs. Gorin the duty to keep the premises in a reasonably safe condition and warn her of latent perils. Spaulding v. City of Melbourne, 473 So.2d 226 (Fla. 5th DCA 1985); Hylazewski v. Wet 'N Wild, Inc., 432 So.2d 1371 (Fla. 5th DCA 1983); Pittman v. Volusia County, 380 So.2d 1192 (Fla. 5th DCA 1980)."
"The defendants contend that the condition of the premises which caused Mrs. Gorin's injury is neither latent nor concealed but rather open and obvious. Therefore, they argue that the legal duty owed to her as an invitee does not require them to give notice or warning of this obvious condition. The obvious danger doctrine recognizes that owners and occupiers should be legally permitted to assume that invitees will perceive conditions obvious to them upon the ordinary use of their own senses. Aventura Mall Venture v. Olson, 561 So.2d 319 (Fla. 3d DCA), review denied, 574 So.2d 142 (Fla. 1990); Circle K Convenience Stores, Inc. v. Ferguson, 556 So.2d 1207 (Fla. 5th DCA 1990). In these situations the courts reason that if any negligence exists, full responsibility for its results should be borne by the plaintiff under comparative negligence principles. See, e.g., Matson v. Tip Top Grocery Company, Inc., 9 So.2d 366 (Fla. 1942). The courts also regard public policy considerations as important justification for adopting this rule. The rule, at least to some extent, protects the property rights of landowners and prevents them from being held accountable as insurers of virtually all that happens to others who enter their property. See Aventura."
"This court and others have applied this doctrine to myriad factual situations in which the conditions which caused the injury were "simply so open and obvious, so *1066 common and so ordinarily innocuous, that they can be held as a matter of law to not constitute a hidden dangerous condition." Circle K, 556 So.2d at 1208 (uneven parking lot surface located at a convenience store does not constitute a hidden dangerous condition). See also Casby v. Flint, 520 So.2d 281 (Fla. 1988) (multiple floor levels in a dimly lit and overcrowded room in a home are not inherently dangerous conditions); Schoen v. Gilbert, 436 So.2d 75 (Fla. 1983) (because a difference in floor levels is not an inherently dangerous condition, even in dim lighting, a homeowner has no duty to warn of such condition as a matter of law); Bowles v. Elkes Pontiac Co., 63 So.2d 769 (Fla. 1952) (uneven floor levels in public places do not constitute latent, hidden and dangerous conditions); Aventura (six inch sidewalk curb located at a mall is not a "concealed or latent danger")."
"We agree with the principles established in these decisions that under most normal circumstances and conditions, ordinary sidewalk curbs, uneven floor levels and uneven parking lot surfaces do not as a matter of law constitute latent, concealed or inherently dangerous conditions. However, these principles are not so sterile that they are free from all exception or totally independent of the particular facts and circumstances of each case. Quite to the contrary, courts have specifically acknowledged that facts and circumstances may exist which do make such conditions inherently dangerous. For example, in Casby v. Flint, 520 So.2d at 282, the court stated "We recognize that accompanying circumstances may transform a change in floor levels into a dangerous situation creating a duty to warn." And in Schoen v. Gilbert, 436 So.2d at 76, quoting Hoag v. Moeller, 82 So.2d 138, 139 (Fla. 1955), the court held that "a difference in floor levels does not of itself constitute failure to use due care... ." (Emphasis added). Moreover, the Aventura court observed, after finding that ordinary curbs are not inherently dangerous, "this was not a case where the surrounding conditions of the step-down were sufficient to transform a normally non-negligent condition into a negligent one." Id. at 320."
"In Bryant v. Lucky Stores, Inc., 570 So.2d 950 (Fla. 2d DCA 1990) the plaintiff fell when she stepped down from a sidewalk onto a speed bump located in a fire lane in front of the store. She brought suit claiming that the sidewalk and speed bump were unsafely designed and that the defendants breached their duty to her by failing to warn her of the danger. The lower court entered summary judgment based on the obvious danger doctrine. The appellate court reversed, finding that the lower court failed to properly consider all of the facts and circumstances. The appellate court concluded that whether the speed bump was unsafe and whether the plaintiff was negligent in failing to see it created questions of fact to be resolved by the jury."
"Similar reasoning was adopted by the court in Hogan v. Chupka, 579 So.2d 395 (Fla. 3d DCA 1991). In that case, the plaintiff tripped on a broken and uneven edge of a sidewalk and fell onto a parking lot located outside the defendant's store. The asphalt of the parking lot "fell some inches short" of the sidewalk, creating a "gully" where the plaintiff's foot became lodged as she tried to catch her balance after she tripped. The court held that whether the store owner breached his duty to the plaintiff by maintaining this condition is a factual issue that should be resolved by a jury."
"Other courts insist on full consideration of all facts and circumstances surrounding an incident and alleged dangerous condition before determining whether the obvious danger doctrine applies or the condition is inherently dangerous as a matter of law. See Northwest Florida Crippled Children's Association v. Harigel, 479 So.2d 831 (Fla. 1st DCA 1985); Kupperman v. Levine, 462 So.2d 90 (Fla. 4th DCA 1985). Such considerations maintain the equilibrium between competing policy considerations of protecting proprietary interests and preventing harm caused by unreasonable and unrestrained use of property, while also recognizing that the existence of negligence always depends on the unique facts and circumstances from which a particular *1067 cause of action arises. See Spivey v. Battaglia, 258 So.2d 815 (Fla. 1972). We must determine under the facts and circumstances of this case whether the curb is not inherently dangerous as a matter of law and whether the obvious danger doctrine applies to prevent any recovery by the plaintiff."
"The sidewalk and driveway area where Mrs. Gorin fell is utilized as a boarding area where the trains pick up and discharge their passengers. When the trains drive into the semicircular driveway the driver parks as close to the curb as possible. There is nothing in the record which indicates that there is any limitation, requirement, or restriction on how close the train must come to the curb in order to drop off or pick up passengers. One of the train drivers testified that "when we pull up, we pull up right alongside the curb or as close to it as, you know, feasibly possible." The sidewalk, curb, and driveway are all the same color and there is nothing to distinguish the sidewalk from the driveway except the actual drop-off or change in levels."
"The configuration of the sidewalk and driveway allows visitors to step directly from the sidewalk onto the train if the train happens to park close enough to the curb. If it does not, visitors are required to step down from the sidewalk onto the driveway and then back up onto the train. The actual distance passengers must travel on the driveway to board the train will, again, depend on how close the train parks to the curb. One of the train drivers, when testifying that four or five other ladies had fallen at the same spot, gave the most accurate description of how people board the train:"
"What happens, when they see our train pull up, they just start walking towards the train and that curb, it blends in with the rest of the concrete and when they head towards the train, they are just walking normally and don't realize there is a curb there and that's when the accident happens... ."
"The fact that this location is used as a boarding area for visitors to get on and off the trains, the blending color of the sidewalk and driveway,[2] the lack of any distinguishing features between the two except the actual drop-off from the curb to the sidewalk, and the fact that the train drivers park as close to the curb as "feasibly possible" may either create an illusion or expectation on the part of the passengers that there is a clear level path to the train or at least, depending on how far away the train actually parks from the curb at any particular time, make any step-down difficult to observe.[3] These facts and circumstances clearly distinguish this case from the ordinary sidewalk curb in Aventura and the ridge in the store parking lot in Circle K, and we are thus unable to determine as a matter of law that the condition which caused Mrs. Gorin's injury is so open and obvious that the obvious danger doctrine would apply to prevent her recovery. We also cannot determine as a matter of law that a condition which requires a passenger to step down from a curb and then back up to the train is not inherently dangerous. These issues present factual questions which should be resolved by the jury."
"We are aware that the location where Mrs. Gorin fell is the same location she had previously traversed when arriving at the museum earlier that day. When she fell she was looking where she was going but simply did not see the drop-off. However, the fact that Mrs. Gorin may have been comparatively negligent is not a circumstance which would allow this court to decide as a matter of law that the defendants were not negligent unless we find that her negligence was the sole cause of her injury. Under the given facts and circumstances, we cannot do so. See Bryant; Spadafora v. Carlo, 569 So.2d 1329 (Fla. 2d DCA 1990); Stewart v. Boho, Inc., 493 So.2d 95 (Fla. 4th DCA 1986)."
"Furthermore, while this court has recognized that an owner or possessor of land is not liable to his invitees for harm caused to them by any activity or condition on the land whose danger is known or obvious to them, we have also recognized that the owner or possessor may nevertheless be held liable if he anticipates or should have anticipated that the harm will occur despite *1068 the obviousness of the danger or the invitee's knowledge of it. Hylazewski; Pittman.[4] See also Heath v. First Baptist Church, 341 So.2d 265 (Fla. 2d DCA), cert. denied, 348 So.2d 946 (Fla. 1977)."
"The curb in this case may constitute a danger to passengers who know the drop off exists because, as we have indicated, it is difficult to see and may require passengers to step down to the driveway and then step up onto the train. In addition, prior to this accident, the defendants were informed that four or five ladies had fallen in the same area and in the same manner as Mrs. Gorin. See Molinares v. El Centro Gallego, Inc., 545 So.2d 387 (Fla. 3d DCA), rev. denied, 557 So.2d 866 (Fla. 1989). Therefore, the defendants' duty to Mrs. Gorin is not abrogated as a matter of law by imputing knowledge to her or implying that she had to know of the dangerous condition alleged in her complaint. Lynch v. Brown, 489 So.2d 65 (Fla. 1st DCA 1986); Heath, 341 So.2d 265."
[1] The duty owed to an invitee is to keep the property in a reasonably safe condition and to warn the invitee of concealed dangers which are known or should be known to the landowner and which are unknown to the invitee and cannot be discovered by him in the exercise of due care. Spaulding v. City of Melbourne, 473 So.2d 226 (Fla. 5th DCA 1985). The duty owed to a licensee is not to intentionally harm him and to warn him of known dangers. Wood v. Camp, 284 So.2d 691 (Fla. 1973). The duty owed to a trespasser is to avoid willful and wanton harm and upon discovery of his presence to warn him of known dangers not open to ordinary observation. Id.; Bovino v. Metropolitan Dade County, 378 So.2d 50 (Fla. 3d DCA 1979).
[2] We are aware Aventura held that the blending color of a sidewalk curb and driveway does not necessarily make the sidewalk curb and drop-off inherently dangerous. While we agree that blending colors alone might not create an inherently dangerous condition under most circumstances, we find that the blending color, when combined with other facts and circumstances present in the case sub judice, may make the curb a dangerous condition, thereby creating an issue of fact to be resolved by the jury.
[3] An engineering expert testified through affidavit filed in opposition to the defendant's motion for summary judgment that:
It is his professional opinion, within a reasonable degree of engineering and scientific certainty that the platform to the tram in the area where the accident occurred presents an inherently and unreasonably dangerous condition. The lack of a delineation between the steps for sidewalk/street and tram areas creates an optical illusion with conflicting and confusing feedback particularly to pedestrians in a vacational and recreational mood.
[4] In Pittman, this court explained this principle as follows:
Likewise, in the usual case, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them. Against such conditions it may normally be expected that the visitor will protect himself. It is for this reason that it is so frequently held that reasonable care requires nothing more than a warning of the danger. But this is certainly not a fixed rule, and all of the circumstances must be taken into account. In any case where the occupier, as a reasonable man, should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, where there is reason to expect that the invitee's attention will be distracted, as by goods on display, or that after lapse of time he may forget the existence of the condition, even though he has discovered it or been warned; or where the condition is one which would not reasonably be expected, and or some reason, such as an arm full of bundles, it may be anticipated that the visitor will not be looking for it... . In all such cases the jury may be permitted to find that obviousness, warning or even knowledge is not enough.
380 So.2d at 1194, quoting W. Prosser, Law of Torts 394-395 (4th ed. 1971). Also quoted in Hylazewski, 432 So.2d at 1373.
Given those facts, viewed in a light most favorable to the appellant, I think Mrs. Gorin established a material question of fact as to whether, by allowing the circumstance and colors to create an illusion of level space and by not taking reasonable steps to warn or correct the problem, the defendants breached their duty of care owed her as a visitor to the premises. While I agree that normally sidewalk curbs do not constitute concealed or dangerous conditions,[2] there were additional factors in this case (discussed above) which transform *1069 this sidewalk/curb-fall case from the ordinary situation. See Williams v. Madden, 588 So.2d 41 (Fla. 1st DCA 1991); Hogan v. Chupka, 579 So.2d 395 (Fla. 3d DCA 1991); Bryant v. Lucky Stores, Inc., 577 So.2d 1347 (Fla. 2d DCA 1990). See also Northwest Florida Crippled Children's Association v. Harigel, 479 So.2d 831 (Fla. 1st DCA 1985); Kupperman v. Levine, 462 So.2d 90 (Fla. 4th DCA 1985).
Additionally, I respectfully suggest that this case illustrates an abuse of the en banc rule. See Booth, The Florida En Banc Rule, 36 U.Fla.L.R. 71, 76, 87 (1984). It turns on its own very unique facts and circumstances, and is not in conflict with any decision of this court or any other Florida court. It is not an important, precedent-setting case. It makes one wonder whether or not we have abandoned the constitutional provision[3] for intermediate court of appeals three-judge panels. If this case merits en banc consideration, it is difficult to conceive of one that does not.
GRIFFIN, Judge, dissenting.
The record clearly reflects that, prior to this accident, one tram operator alone had seen several people fall at this location:
You know, I told her that I hoped she felt better and I was real sorry that it happened and I told her, you know, she  she said something about feeling humiliated or something and I said well, don't feel humiliated. I said this isn't the first person this has happened to and I went on to say that I had seen it happen before.
* * * * * *
That people fall off the curb before and I had told her on one occasion that I had seen two ladies fall off the curb at the same time.
* * * * * *
Yeah. And I've seen people trip on it. I've seen people almost fall to the ground but catch themselves. But, it's always been a woman that has fallen down.
* * * * * *
I would say approximately four or five people actually fall to the ground.
* * * * * *
Yeah, and I'm really not supposed to ever leave that train running like that, especially with people on board it, but I felt it was necessary and I went inside the Lightner Museum. The lady was at the desk. I said, `You have a problem out here.' I said, `I just saw two ladies fall.' I said, `I've seen it before.' I said, `You need to put a safety strip down on the curb because people don't know it's there.'
Even though it appears the curb at the foot of the steps entering the museum was maintained by the City, in my view the museum had a duty to its patrons to take reasonable measures to correct, or have corrected, this apparently hazardous condition at their entrance. The record suggests, however, the museum did nothing. In the recent opinion of the First District Court of Appeal in Williams v. Madden, 588 So.2d 41 (Fla. 1st DCA 1991), it was held to be a jury question whether the land owner should have warned its invitee of a change in floor level, even though the step down was open and obvious to persons exercising reasonable care for their own safety and even though it previously had been traversed by the plaintiff. As the First District Court noted, citing Restatement (Second) of Torts, § 343A (1965), where a possessor of land has reason to anticipate harm to its invitee, it may be liable for failing to take measures to correct the hazardous condition, even though the condition is obvious. Such a reason to expect harm may arise where the possessor has reason to expect the invitee's attention may be distracted so he will not discover what is obvious or will forget what he has discovered. Restatement (Second) of Torts, § 343A, comment f. The occurrence or nonoccurrence of other accidents can serve to prove whether a possessor of land should anticipate the harm. 588 So.2d at 43. See also Bryant v. Lucky Stores, Inc., 577 So.2d 1347, 1350-54 (Fla. 2d DCA 1990) *1070 (Altenbernd, J., concurring in part, dissenting in part).
I can find no evidence in the record that the City had actual knowledge of the reports of prior accidents; however, it was the City that designed and constructed this tram loading zone. Because of the frequency of similar accidents, the record suggests this area may have been defectively designed, built or marked. Based on this record, I agree with the original panel majority that summary judgment was improper.
W. SHARP, J., concurs.
NOTES
[1] See Holl v. Talcott, 191 So.2d 40 (Fla. 1966); Gonzalez v. Great Oaks Casualty Insurance Co., 574 So.2d 1182, 1183 (Fla. 3d DCA 1991); Greene v. Kolpac Builders, Inc., 549 So.2d 1150 (Fla. 3d DCA 1989); Williams v. Florida Realty & Management, 272 So.2d 176, 177 (Fla. 3d DCA 1973).
[2] Aventura Mall Venture v. Olson, 561 So.2d 319 (Fla. 3d DCA), rev. denied, 574 So.2d 142 (Fla. 1990).
[3] Art. V, § 4(a), Fla. Const.