778 So.2d 490 (2001)
Theresa KROL, et al., Appellants,
v.
CITY OF ORLANDO, Appellee.
No. 5D00-209.
District Court of Appeal of Florida, Fifth District.
February 23, 2001.
Marc Jay Tannen of Abrams Anton, P.A., Hollywood, for Appellants.
Launa K. Rutherford and Jeremy K. Markman of Grower, Ketcham, More, Rutherford, Noecker, Bronson & Eide, P.A., Orlando, for Appellee.
SAWAYA, J.
The appellants, Robert and Theresa Krol, appeal a summary judgment entered in their personal injury lawsuit in favor of the appellee, City of Orlando (the City). The trial court entered summary judgment finding "that the City's decision to install a particular open throat storm drain with a *491 particular alignment is a judgmental planning level function for which absolute immunity attaches." The trial court also held that the storm drain was open and obvious and summary judgment was appropriate as a matter of law pursuant to the decision in Rosenfeld v. Walt Disney World Co., 651 So.2d 811 (Fla. 5th DCA 1995) and its ancestry. We reverse.
There are two distinct issues that we must resolve in determining whether summary judgment is appropriate: 1) whether the sovereign, the City, is immune from liability and 2) whether judgment in favor of the City is appropriate as a matter of law pursuant to the obvious danger doctrine. We will discuss in separate sections of this opinion the following: the factual background of the instant case; the standard of review; the doctrine of sovereign immunity as it applies to the instant case; and the obvious danger doctrine.

Factual Background
This case originated when Theresa stepped off a median into an open storm water drain situated on Garland Avenue in the Church Street Station area of the City. As a result, she fell and broke her ankle. At the time Theresa stepped down from the median, it was dark and it had been lightly raining.
Karl McClary, the Supervisor of Storm Water Management for the City, testified that the City is responsible for maintaining the drainage systems on Garland Avenue and that the levels or slopes of throat openings vary depending on the "hydrology" (waterflow) of the particular location. The pictures of the particular drain that caused this incident show that as pedestrians step down from the sidewalk, they step directly onto a severely sloped area or plank of concrete leading directly into the drain opening which is reported to be slippery when wet. The pictures also show that this particular drain opening may be difficult to see as pedestrians approach the location.
Mr. McClary also testified that the drains located across the street from the location where Theresa fell had grate covers over them which prevented pedestrians from stepping into the throat of the drains. The pictures of these particular drains show that a corrugated metal plate has been placed on the curb over each drain opening in order to extend the location of any step down from the curb onto the road beyond the slope of the drain opening. In addition, some pictures showed that a corrugated metal plate was placed on the roadway over the sloped plank of concrete to make a level area for the pedestrian to step onto. These covered drains are maintained by Church Street Station.
Frank Occhipanti, a Construction Manager for Church Street Station, testified that he was involved in the decision to place the corrugated metal plates on the storm drains maintained by Church Street Station. He testified that he thought these corrective measures were necessary because the drain openings were too large and they presented a potential danger to pedestrians. He further testified that the City had been made aware of these corrective measures. Testimony in the record also reveals that the Director of Public Works for the City received a request from Church Street Station for authorization to modify the inlets to their storm drains with the corrugated metal plates and that the City gave its authorization. The testimony of the Bureau Chief for Project Construction for the City was that he knew of no other reason why Church Street Station would place metal coverings over their storm drains other than to protect pedestrians from stepping into them.

Standard Of Review
The proper standard of review of a summary judgment is de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000); Sierra v. Shevin, 767 So.2d 524 (Fla. 3d DCA 2000). In order to determine the propriety of a summary judgment, this court must resolve whether there is any "genuine issue as to any material *492 fact" and whether "the moving party is entitled to a judgment as a matter of law." Fla.R.Civ.P. 1.510(c). Generally, "[t]he party moving for summary judgment has the burden to prove conclusively the nonexistence of any genuine issue of material fact." City of Cocoa v. Leffler, 762 So.2d 1052, 1055 (Fla. 5th DCA 2000) (citing Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966)). We must consider the evidence contained in the record, including any supporting affidavits, in the light most favorable to the non-moving party, the Appellants, and if the slightest doubt exists, the summary judgment must be reversed. See Sierra. We will apply this standard of review to each issue, beginning with the issue relating to sovereign immunity.

Sovereign Immunity
There has been much litigation against governmental entities relating to injuries incurred by citizens utilizing capital improvements. As a result, some general principles have emerged from the case law. One principle provides that planning and designing capital improvements are discretionary functions of government which are immune from tort liability and do not fall within the ambit of the waiver provisions of section 768.28, Florida Statutes (Supp.1996). See Perez v. Department of Transp., 435 So.2d 830 (Fla.1983); Department of Transp. v. Neilson, 419 So.2d 1071 (Fla.1982); City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla.1982). It is this general principle that the trial court utilized to impose summary judgment against the Appellants in the instant case.
There is, however, an exception to the general rule of immunity regarding decisions relating to the planning and designing of capital improvements that the trial court failed to apply. This exception provides that once a governmental entity creates a known dangerous condition which may not be readily apparent to those who could be injured by it, then the government must take steps to correct the dangerous condition or warn those who may be injured by it. Bailey Drainage Dist. v. Stark, 526 So.2d 678 (Fla.1988); Collom, Neilson. The court in Collom explained, "[W]e find it unreasonable to presume that a governmental entity, as a matter of policy in making a judgmental, planning-level decision, should knowingly create a trap or a dangerous condition and intentionally fail to warn or protect the users of that improvement from the risk." 419 So.2d at 1086. Generally, the courts speak in terms of a known danger when they enunciate the exception. However, actual or constructive knowledge will suffice. Allen v. Port Everglades Auth., 553 So.2d 1341 (Fla. 4th DCA 1989); Feldstein v. City of Key West, 512 So.2d 217, 219 n. 5 (Fla. 3d DCA 1987).
The testimony in the record reveals that the City was notified by Church Street Station that a potential dangerous condition may exist regarding the storm drains in that area and that Church Street Station intended to modify its storm drains to correct the problem. We conclude that this evidence raises a disputed issue of material fact, namely whether application of the exception to the rule of immunity relating to planning and designing capital improvements is appropriate in the instant case. We next turn to the obvious danger doctrine.

The Obvious Danger Doctrine
The first inquiry in a negligence action is whether the defendant owed a duty to the plaintiff. Under the facts of this case, Theresa occupies the status of an invitee. This court has consistently held that the duty owed to invitees is 1) to use ordinary care in keeping the premises in a reasonably safe condition, and 2) to give timely warning of latent or concealed perils which are known or should be known by the owner or occupier. Spaulding v. City of Melbourne, 473 So.2d 226 (Fla. 5th DCA 1985); Hylazewski v. Wet `N Wild, Inc., 432 So.2d 1371 (Fla. 5th DCA 1983); Pittman v. Volusia County, 380 So.2d 1192 *493 (Fla. 5th DCA 1980); see also Milton v. Broxson, 514 So.2d 1116 (Fla. 1st DCA 1987); Lynch v. Brown, 489 So.2d 65 (Fla. 1st DCA 1986); Cassel v. Price, 396 So.2d 258 (Fla. 1st DCA 1981).
The City contends that the condition of the premises which caused Theresa's injury is neither latent nor concealed but rather open and obvious. Therefore, the City argues that the legal duty owed to Theresa as an invitee does not require it to give notice or warning of this obvious condition. The City asserts that this court's decisions in Rosenfeld and Gorin v. City of St. Augustine, 595 So.2d 1062 (Fla. 5th DCA 1992), support application of the obvious danger doctrine in the instant case.
The obvious danger doctrine recognizes that owners and occupiers should be legally permitted to assume that the invitee will perceive that which would be obvious to them upon the ordinary use of their own senses.[1]Aventura Mall Venture v. Olson, 561 So.2d 319 (Fla. 3d DCA 1990); Circle K Convenience Stores, Inc. v. Ferguson, 556 So.2d 1207 (Fla. 5th DCA 1990); see also Rosenfeld; Gorin.
This court and others have applied this doctrine to myriad factual situations in which the conditions that caused the injury were "simply so open and obvious, so common and so ordinarily innocuous, that they can be held as a matter of law to not constitute a hidden dangerous condition." Circle K Convenience Stores, Inc., 556 So.2d at 1208 (finding that an uneven parking lot surface located at a convenience store does not constitute a hidden dangerous condition); see also Casby v. Flint, 520 So.2d 281 (Fla.1988) (finding that multiple floor levels in a dimly lit and overcrowded room in a home are not inherently dangerous conditions); Bowles v. Elkes Pontiac Co., 63 So.2d 769 (Fla.1952) (concluding that uneven floor levels in public places do not constitute latent, hidden, and dangerous conditions); Rosenfeld (holding that a street curb in an amusement park is not an inherently dangerous condition); Gorin (concluding that a sidewalk curb used as a platform to pick up and drop off passengers riding a tram is not a hidden dangerous condition); Aventura Mall Venture, 561 So.2d at 320 (finding that six inch sidewalk curb located at a mall is not a "concealed or latent danger").
However, the particular facts and circumstances of the instant case clearly distinguish it from Rosenfeld, Gorin and the other decisions we have just cited. The open storm water drain which caused Theresa's injury is steeply sloped at the spot where a pedestrian would step from the sidewalk to the roadway. The slope of this particular area leads directly into the drain opening and presents a much different and more potentially dangerous condition than common sidewalk curbs or uneven floor levels in homes, parking lots or public places of business. We find that the open storm water drain in the instant case is more analogous to the conditions involved in Turner v. Winn-Dixie Food Stores, Inc., 651 So.2d 827 (Fla. 5th DCA 1995); Hogan v. Chupka, 579 So.2d 395 (Fla. 3d DCA 1991); and Bryant v. Lucky Stores, Inc., 577 So.2d 1347 (Fla. 2d DCA 1990).
In Turner, this court held that a pothole in a parking lot which caused the plaintiff to fall and injure herself "is clearly different from an ordinary sidewalk curb or a joint between concrete and asphalt." 651 So.2d at 828. Thus, in its findings, the *494 court distinguished Gorin and reversed the summary judgment entered in favor of Winn Dixie which was based on the obvious danger doctrine. Similarly, in Hogan, the plaintiff tripped on a broken and uneven edge of a sidewalk and fell onto a parking lot located outside the defendant's store. The asphalt of the parking lot "fell some inches short" of the sidewalk, creating a "gully" where the plaintiff's foot became lodged as she tried to catch her balance after she tripped. The court held that whether the store owner breached his duty to the plaintiff by maintaining this condition is a factual issue that should be resolved by a jury.
In Bryant, the plaintiff fell when she stepped down from a sidewalk onto a speed bump located in a fire lane in front of the store. She brought suit claiming that the sidewalk and speed bump were unsafely designed and that the defendants breached their duty to her by failing to warn her of the danger. The trial court entered summary judgment based on the obvious danger doctrine. The appellate court reversed, holding that the trial court failed to properly consider all of the facts and circumstances. The appellate court concluded that whether the speed bump was unsafe and whether the plaintiff was negligent in failing to see it created questions of fact to be resolved by the jury.
Based of the facts and circumstances of the instant case and in accordance with the decisions in Turner, Hogan and Bryant, we are unable to determine as a matter of law that the condition which caused Theresa's injury was so open and obvious that the obvious danger doctrine would apply to prevent her recovery. We also cannot determine as a matter of law that the open storm water drain in the instant case is not inherently dangerous. These issues present factual issues that should be resolved by a jury.

Conclusion
Based on the particular facts and circumstances of the instant case, we find that genuine issues of material fact exist regarding: 1) whether the City is immune from suit, and 2) whether application of the obvious danger doctrine is appropriate to bar Theresa's recovery. We conclude that the trial court erred in resolving these material factual issues by entering summary judgment in favor of the City. The summary judgment is reversed and this case is remanded to the trial court for further proceedings.
REVERSED and REMANDED.
PETERSON, J., concurs.
COBB, J., concurs specially, with opinion.
COBB, J., concurring specially.
As I read the relevant opinions of the Florida Supreme Court, liability of a governmental entity arising from a planning-level decision exists only where that entity has created a hidden trap, thereby giving rise to a duty to correct the danger or warn of its existence, and that duty is imposed on the basis of actual, not merely constructive, knowledge. See Bailey Drainage District v. Stark, 526 So.2d 678 (Fla.1988); Payne v. Broward County, 461 So.2d 63, 66 (Fla.1984); Harrison v. Escambia County School Board, 434 So.2d 316 (Fla.1983); City of St. Petersburg v. Collom, 419 So.2d 1082, 1085 (Fla. 1982); Department of Transportation v. Neilson, 419 So.2d 1071 (Fla.1982). The two district court opinions[1] cited in the majority opinion in regard to constructive knowledge as the basis for an exception to governmental immunity for planning-level decisions would eviscerate and, for all practical purposes, eliminate the immunity doctrine. In any tort claim against a governmental entity involving a planning level *495 decision, the allegation inevitably will be that the decision created a trap and the government should have known that it wouldhence, everything becomes a jury issue.
In the instant case Frank Occhipanti, whose credentials as an expert apparently are not challenged, gave his opinion as to the danger posed by the drain in question. This, coupled with evidence of the City's actual knowledge of the corrective measures taken by Church Street Station in regard to the same such drain, is sufficient to preclude a summary judgment. Particularly significant is Occhipanti's testimony that the instant drain was wider than that usually encountered. Except for the testimonial evidence of Occhipanti, the summary judgment entered by the trial court in this case would have been correct based upon our opinions in Rosenfeld v. Walt Disney World Co., 651 So.2d 811 (Fla. 5th DCA 1995) and Gorin v. City of St. Augustine, 595 So.2d 1062 (Fla. 5th DCA), rev. denied, 604 So.2d 486 (Fla.1992).
It may well be that the decimation of governmental immunity by this and other district courts of appeal is in tune with the prevailing trend of tort law in Florida, and that such opinions eventually will be approved and even applauded by the Florida Supreme Court. Be that as it may, at the risk of being labeled archaic, I would adhere to the concept that district courts should not ignore or amend extant authority of the supreme court, even in the name of social progress. See Hoffman v. Jones, 280 So.2d 431 (Fla.1973). We should at least recognize the principle of stare decisis to the extent of allowing the current members of the Florida Supreme Court to recede from the prior precedent of that court rather than impetuously arrogating to ourselves the right to do so.
NOTES
[1] In these situations Florida courts reason that if any negligence exists, full responsibility for its result should be borne by the plaintiff under comparative negligence principles. See, e.g., Matson v. Tip Top Grocery Co., 151 Fla. 247, 9 So.2d 366 (1942). Quite apart from reasoning based on legal principle, Florida courts regard public policy considerations as important justification for adopting this principle as legal doctrine. The courts consider that this rule, at least to some extent, protects the property rights of landowners and prevents them from being held accountable as insurers of virtually all that happens to others who enter their property. See Aventura Mall Venture v. Olson, 561 So.2d 319 (Fla. 3d DCA 1990).
[1] Allen v. Port Everglades Auth., 553 So.2d 1341 (Fla. 4th DCA 1989) and Feldstein v. City of Key West, 512 So.2d 217 (Fla. 3d DCA 1987). In point of fact, this court also has enunciated the same constructive knowledge criterion. See Hodges v. City of Winter Park, 433 So.2d 1257 (Fla. 5th DCA 1983), rev. denied, 444 So.2d 416 (Fla.1984).