374 So.2d 64 (1979)
Vincent A. FERLA, Etc., et al., Appellants,
v.
METROPOLITAN DADE COUNTY, et al., Appellees.
No. 78-2331.
District Court of Appeal of Florida, Third District.
July 24, 1979.
Rehearing Denied September 10, 1979.
*65 Grable & Dieguez and Anthony Dieguez, Hialeah, for appellants.
Knecht & Holland and Harold C. Knecht, Jr., Coral Gables, for appellees.
Before PEARSON, KEHOE and SCHWARTZ, JJ.
SCHWARTZ, Judge.
This is probably the first of what will certainly be countless cases in which the district courts are required to expound upon the text of the supreme court's decision in Commercial Carrier Corp. v. Indian River County, and Cheney v. Dade County, 371 So.2d 1010 (Fla. 1979). We must decide whether particular claimed acts of negligence asserted against Dade County in the construction, maintenance, and operation of the Rickenbacker Causeway in Miami represent *66 "planning level" discretionary decisions which are immune from tort liability or "operational" acts which are not.
These issues are presented on appeal by the plaintiffs from a summary judgment entered for the county below. No discovery had been incorporated into the file when the motion for summary judgment was granted. It is therefore obvious  and the county concedes here  that the basis of the decision was our now-defunct, but then extant opinions in Commercial Carrier Corp. v. Indian River County, 342 So.2d 1047 (Fla. 3d DCA 1977) and Cheney v. Dade County, 353 So.2d 623 (Fla. 3d DCA 1977). Following these decisions, the trial judge held that the county could not be held liable, for lack of a "special duty" owed to the plaintiffs, for the actions alleged in their second amended complaint. It stated:
"2. At all times material hereto the Defendant, METROPOLITAN DADE COUNTY, through its agents, servants or employees did construct or cause the construction of `Rickenbacker Causeway'; a road situated in Dade County, Florida which is open to the general public for motor-vehicular travel.
3. At all times material hereto the Defendant, METROPOLITAN DADE COUNTY has exercised exclusive control, maintenance, and repair of said road.
4. On or about October 3, 1976, at approximately 3:15 p.m., at or near 500 feet West of the East end of the draw bridge of said road the Plaintiffs were in a motor-vehicle traveling in an Easterly direction on the roadway.
5. At the time and place specified in paragraph four, a motor-vehicle traveling in a Westerly direction suddenly unexpectedly, and without warning became airborne and traveled directly into the path of the Plaintiffs' motor-vehicle and caused a head-on collision.
6. Upon information and belief, it is alleged that the motor-vehicle which collided with Plaintiffs' motor-vehicle was propelled through the air into oncoming traffic due to a concrete median strip or road divider when the operator of said motor-vehicle allowed his left front tire to come into contact with the said divider.
7. Plaintiffs sustained severe injuries as a result of said collision.
8. At the above mentioned time and place the Defendant, METROPOLITAN DADE COUNTY owed a duty to the Plaintiffs to construct, maintain and repair a reasonably safe road but breached said duty as follows:
a. By designing, constructing and maintaining a highly danger enhancing median driver strip so as to cause motorists to lose control of their motor-vehicle.
b. By designing, construction and maintaining a highly divider strip which cause motor-vehicles to become airborne into the path of oncoming traffic.
c. By failing to warn of the danger and not lowering speed limits to a speed which diminishes the airborne propelling effect of the said median strip.
d. By constructing lanes too narrow so that the chances of motor-vehicle coming onto contact with the said median strip are increased.
e. By failing to re-design the said median strip.
f. By failing to erect a barrier or other device to prevent traffic to be propelled onto oncoming traffic."
As we analyze this pleading, the plaintiffs in essence accused the county of negligence in four different particulars: (a) improper design of the median strip; (b) setting of an excessively high speed limit (c) constructing overly narrow traffic lanes, and (d) failing to erect a barrier in the median strip so as to prevent headon collisions. The impact of Commercial Carrier-Cheney upon each of these claims must necessarily be considered separately.
Median strip design. We think that the claim that the median strip was negligently designed and constructed so as to cause a car which accidently came into contact with it to become airborne rather clearly falls within that class of governmental *67 decision-making which the supreme court characterized as "operational" and thus actionable. The determination of the precise configuration of the median strip, which the county had already determined was to be installed in some form conceptually does not differ from the activity involved in properly maintaining already installed traffic control devices  which the court specifically held to be non-immune from tort liability in Commercial Carrier-Cheney. See also Welsh v. Metropolitan Dade County, 366 So.2d 518 (Fla. 3d DCA 1979). Several decisions interpreting the Federal Tort Claims Act's "discretionary function" exception, which the supreme court found helpful and analogous in Commercial Carrier, support this view. For example, in Seaboard Coast Line R. Co. v. United States, 473 F.2d 714 (5th Cir.1973), the fifth circuit dealt with a claim that the government had negligently designed and constructed a drainage ditch at an army base. The court stated at 473 F.2d 716:
"The government next contends that even if the District Court's fact findings are not clearly erroneous, the District Court had no jurisdiction over plaintiff's complaint because government decisions concerning designs, plans, and specifications are within the discretionary function exception to the Federal Tort Claims Act."
* * * * * *
"We think the District Court was neither clearly erroneous regarding the facts, nor in error in applying the law. The discretionary function envisioned by 28 U.S.C. § 2680(a) and by Dalehite was the government's policy decision to construct an aircraft maintenance facility at Fort Rucker and to build a drainage system in furtherance of that goal. Once the government decided to build a drainage ditch, it was no longer exercising a discretionary policy-making function and it was required to perform the operational function of building the drainage ditch in a non-negligent manner."
See also, e.g., United States v. Hunsucker, 314 F.2d 98 (9th Cir.1962); American Exchange Bank of Madison, Wis. v. United States, 257 F.2d 938 (7th Cir.1958); Stanley v. United States, 347 F. Supp. 1088, 1095-1096 (D.Me. 1972), vacated on other grounds, 476 F.2d 606 (1st Cir.1973); Hardy v. United States, 187 F. Supp. 756, 761 (E.D.S.C. 1960); Hernandez v. United States, 112 F. Supp. 369, 371 (D.Hawaii 1953); cf. Moyer v. Martin Marietta Corp., 481 F.2d 585 (5th Cir.1973). Thus the summary judgment must be reversed as to this aspect of the plaintiff's case.
Setting of Speed Limit. We have no doubt whatever that an opposite conclusion is required as to the claim that the county set the speed limit on the causeway too high. Such a determination is obviously a part of the "planning" function of government which cannot be made the basis of tort liability. In Weiss v. Fote, 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960), the court held that an injured pedestrian could not base a negligence claim against a city on the ground that it had provided too short a "clearance interval" for the traffic light at the intersection where the accident occurred. In Commercial Carrier, the supreme court cited the Weiss case with approval. This fact forecloses any assertion that governmental liability can arise from the setting of speed limits, which, perhaps even more than the decision involved in Weiss, concerns a judgmental decision which is "inherent in the act of governing." Commercial Carrier v. Indian River County, supra, at 1020. See also Wong v. City of Miami, 237 So.2d 132 (Fla. 1970), which was also endorsed in Commercial Carrier.
Widening of Lanes. The claim that the traffic lanes on the causeway were "too narrow" presents a more difficult issue. The fixing of the size of the roadway in question would seem, on the face of the matter, analytically indistinguishable from the question of the median strip design which we have already determined to be an "operational" activity. We may take judicial notice, however, of the fact that the only ways that the traveled lanes of an existing bridge like the Rickenbacker Causeway may be widened would be to turn *68 two already heavily traveled lanes of traffic into an utterly unmanageable single one; or, at massive expense, to build an entirely new or additional bridge. We must conclude that either determination would require a "basic policy decision" of the County Commission and therefore involves, by definition of the supreme court, Commercial Carrier Corp. v. Indian River County, supra, at 1021, the exercise of a "planning level function" from which the county is immune. Cf. Daniel v. United States, 426 F.2d 281 (5th Cir.1970); Mahler v. United States, 306 F.2d 713 (3d Cir.1962).[1]
Erection of Barrier. The plaintiffs' final claim apparently concerns the contention that the county should have erected some kind of impenetrable barrier in the median strip to prevent a car from going over into the wrong side of the road and causing a headon collision. We find that we cannot answer the Commercial Carrier-Cheney question as to this issue on the face of the complaint alone. We simply do not know who makes, or what considerations are involved in, the decision to build or not to build such a structure. Therefore, we can make no reasoned determination as to whether that decision involves a "planning" or "operational" function of the county. Consequently, as to this issue, we reverse the summary judgment and remand the cause for the purpose of developing a record which will permit an application of the considerations treated in Commercial Carrier-Cheney and the cases cited in that decision, to the actual facts of this situation. See Evangelical United Brethren Church of Adna v. State, 67 Wash.2d 246, 407 P.2d 440 (1966); Johnson v. State, 69 Cal.2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968).
To summarize, we hold that the median strip design question is, as a matter of law, not the subject of governmental immunity; that the speed limit and lane size issues, as a matter of law, are; and that the barrier contention may be decided only after a factual development of the factors and methods involved in that decision-making process. The judgment under review is therefore affirmed in part and reversed in part and the cause is remanded for further proceedings consistent with this opinion.
Affirmed in part, reversed in part and remanded.
PEARSON, Judge (concurring in part and dissenting in part).
It is with some temerity that I advance my views in this matter, having been the writer in this court's opinion in both the Commercial Carrier and Cheney cases; but in light of the recent developments in the case law in this area, I suggest the following.
There are four areas of possible negligence in the present case to which the tests of the Commercial Carrier case must be applied; they are (1) median strip design, (2) setting of the speed limit, (3) widening of lanes and (4) erection of barrier. I concur with the majority in their disposition of all except "median strip design." It appears to me that the design of a median strip, which is a part of the overall plan for a road, should properly "be classified as a discretionary governmental process and nontortious, regardless of its unwisdom." See Evangelical United Brethren Church of Adna v. State, 67 Wash.2d 246, 407 P.2d 440 (1965), quoted at length in Commercial Carrier.
This position seems to be supported by the reasoning in Seaboard Coast Line Railroad Company v. United States, 473 F.2d 714 (5th Cir.1973), quoted by the majority. In that case, it was not a question of the "design" of the drainage ditch that was at issue, but rather a question of the negligent performance in building the drainage ditch. As quoted in the majority opinion: "Once *69 the government decided to build a drainage ditch, it was no longer exercising a discretionary policy-making function and it was required to perform the operational function of building the drainage ditch in a non-negligent manner."
It must be concluded that if the design of a median strip is itself a negligent act so that the resulting median constitutes a trap for the unwary, then there is actionable negligence. I do not believe that this is what the plaintiff would have to prove in the instant case. The factual presentation before the court was simply that the design made it possible for a vehicle to jump the median strip. The county's affirmative proof was without issue that the design was according to the best available highway engineering at the time it was constructed. A design that is not of itself negligent ought not to charge the public with the costs of an accident.
It is difficult to conceive of a highway collision in which one of the drivers cannot say that the collision would not have occurred if the roadway had been better "designed."
I would, therefore, affirm the trial court's summary judgment on the issue of the negligent design of the median strip.
NOTES
[1] The distinction we feel compelled to draw between the median design and the lane width situations, the essential basis of which is difficult indeed to articulate, well illustrates the self-acknowledged "deficiencies" and "lack of certainty and predictability," Commercial Carrier Corp. v. Indian River County, supra, at 1021, involved in the analysis contained in Johnson v. State, 69 Cal.2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968), which our court specifically adopted in the Commercial Carrier case.