465 So.2d 560 (1985)
Leon "Buck" GREENE, and His Wife, Donnie Lee Greene, Appellants,
v.
STATE of Florida, DEPARTMENT OF TRANSPORTATION, by and through Its Chief Officer, Paul N. Papas, Secretary, and Walton County, Florida, by and through Its Board of County Commissioners, Sam Pridgen, Chairman, Derward Owen, W.F. Miles, W.L. McLean and Bob Anderson, Appellees.
No. AZ-304.
District Court of Appeal of Florida, First District.
March 7, 1985.
Ferrin C. Campbell, Sr., Crestview, for appellants.
Pamela L. Cooper, of Meyer, Brooks and Cooper, P.A., Tallahassee, for Dept. of Transp., appellee.
George Ralph Miller, DeFuniak Springs, for Walton County, appellee.
WIGGINTON, Judge.
Appellants appeal the trial court's final judgment of dismissal of their suit against the Department of Transportation (Department) and Walton County for failure to state a cause of action. The final judgment was rendered after entry of orders granting appellees' motions to dismiss appellants' amended complaint. We reverse.
Appellants' two-count complaint sought damages against appellees in excess of $5,000, alleging that appellant Buck Greene suffered injuries in an automobile accident on County Road 280, which was constructed by the Department and maintained by Walton County. The complaint alleged that the Department and the County knew or should have known of the road's dangerous *561 condition but failed to warn the public.[1] Count II set forth Mrs. Greene's claim for loss of consortium.
It is well established that certain discretionary, judgmental, planning-level decisions on the part of a governmental entity are immune from suit under the doctrine of sovereign immunity. Commercial Carrier Corporation v. Indian River County, 371 So.2d 1010 (Fla. 1979). However, operational-level decisions may be actionable. The decision to build or change a road, and all the determinations inherent in such a decision, are of the judgmental, planning-level type. Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982). In Neilson, the court declared:
Such decisions as the location and alignment of roads, the width and number of lanes, and the placing of traffic control devices are not actionable because the defects are inherent in the overall project itself. The fact that a road is built with a sharp curve is not in itself a design defect which creates governmental liability. If, however, the governmental entity knows when it creates a curve that vehicles cannot safely negotiate the curve at speeds of more than twenty-five miles per hour, such entity must take steps to warn the public of the danger. (Emphasis supplied).
The court went on to declare:
The failure to so warn of a known danger is, in our view, a negligent omission at the operational level of government and cannot reasonably be argued to be within the judgmental, planning-level sphere. Clearly, this type of failure may serve as the basis for an action against the governmental entity.
In City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982), the court held:
[W]hen a governmental entity creates a known dangerous condition, which is not readily apparent to persons who could be injured by the condition, a duty at the operational-level arises to warn the public of, or protect the public from, the known danger. The failure to fulfill this operational-level duty is, therefore, a basis for an action against the governmental entity.
In the instant case, in their amended complaint, the appellants alleged design defects in County Road 280, which are not actionable in themselves, but they further alleged that those defects constituted a "known trap" and a "dangerous condition of which said defendants knew or should have known, but failed to warn the public of the dangerous condition." They alleged that the road contained "hidden-dip" profiles, thus indicating that the defects of which the Department and the County knew or should have known, and of which they should have warned, were not readily apparent to the general public.
*562 In our view, the amended complaint, as drafted, although fatally deficient in adequately stating a cause of action, contains sufficient allegations to withstand a final judgment of dismissal without leave to amend. To survive the process, the amended complaint must set forth additional ultimate facts regarding the alleged "known trap" and "hidden-dip" sufficient to establish more clearly the allegations of inherent danger, knowledge on the part of the state and county, and lack of knowledge on the part of appellants. As in Neilson, appellants should be allowed the further opportunity to amend their complaint to set forth those additional allegations, if they can, especially in light of Florida Rule of Civil Procedure 1.190, which sets forth a liberal amendment policy.
Therefore, we affirm the trial court's dismissal of the case but reverse and remand to permit appellants the opportunity to file a second amended complaint within twenty days of the date of issuance of this Court's mandate, and failing such the trial court's judgment of dismissal shall then be reinstated. Compare Neilson.
Affirmed in part, reversed in part, and remanded.
WENTWORTH and THOMPSON, JJ., concur.
NOTES
[1] Paragraph 7 of the complaint alleged as follows:

The area where the collision occurred, County Road 280 as constructed by the defendant, State of Florida, Department of Transportation, and maintained by the defendant, Walton County, constitutes a known trap and a dangerous condition of which said defendants knew or should have known, but failed to warn the public of the dangerous condition. In this respect, County Road 280 consists of a number of steep hills commonly referred to in Roadway Design and Safety Trade manuals as a "roller-coaster" grade line and contains what is referred to in such manuals as "hidden-dip" profiles. In this respect the collision occurred near the crest of a steep hill at the intersection of the Bar Nothing Ranch Road and CRC 280. At this particular intersection the road CRC 280 because of the steepness of the hill does not meet design standards in that the safe stopping distance for the posted speed limit is not sufficient and therefore constitutes a dangerous trap for motorists attempting to make a left turn onto the Bar Nothing Ranch Road. The combination of the steep hill with a "hidden-dip" and an inadequate safe sighting distance together with an intersection resulted in a dangerous trap expecially [sic] for motorists attempting to make a left turn onto the Bar Nothing Ranch road. The specific design standard requirements most absent from the existing roadway section where the collision occurred are:
(1) Existing grades too steep for legal speed of 55 mph.
(2) Excess algebraic difference at vertical intersection of grades.
(3) Inadequate vertical curve length (250 ft. actual 450 ft. minimum; 1350 ft. desirable).
(4) Inadequate stopping sight distance for the legal speed (413 minimum required at 55 mph.)