512 So.2d 217 (1987)
Donald FELDSTEIN and Carol Feldstein, His Wife, Appellants,
v.
The CITY OF KEY WEST, Florida, Appellee.
No. 86-2767.
District Court of Appeal of Florida, Third District.
July 21, 1987.
Spence, Payne, Masington, Grossman & Needle, Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin and Joel Eaton, Lawrence & Daniels, Miami, for appellants.
Fleming, O'Bryan & Fleming and Michael T. Burke, Fort Lauderdale, for appellee.
Before HUBBART, DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
The questions on this appeal are (1) whether the City of Key West, having undertaken a street and sidewalk renovation program after the enactment of Section 335.075(a), Florida Statutes (1975),[1] was required *218 by the statute to provide a permanent wheelchair ramp at a curb not being renovated but connected by a crosswalk to a curb within the renovation zone at which a statutorily required ramp had been installed, and (2) apart from any obligation under the statute, whether installing a permanent ramp at a curb connected by a crosswalk to a curb that contains no ramp creates a known dangerous condition and thus imposes a duty on the municipality to correct or warn of the condition. The trial court, concluding that the City had no statutory duty to construct the additional ramp and that its failure to do so did not result in the creation of a known dangerous condition, entered summary judgment for the City. We reverse.
Donald Feldstein, dependent on a wheelchair for the last 37 of his 41 years, was struck by a motor vehicle while proceeding south in his motorized wheelchair on Duval Street in Key West, Florida. According to Mr. Feldstein, he was in the street on this dark and rainy night, carefully hugging the line of cars parked on the side of Duval Street, because there was no wheelchair ramp at the curb on the southwest corner of Duval and Olivia Streets. Mr. Feldstein, having entered the crosswalk connecting the northwest and southwest corners of the Duval-Olivia intersection by way of a ramp on the northwest corner and now confronted on the southwest corner with a curb, found himself having to look for access to the Duval Street sidewalk. Almost immediately after choosing to continue south in the street, Mr. Feldstein was struck.
The explanation for the presence of a ramp on one end of the crosswalk and the absence of a ramp on the other is a simple one. The ramp on the northwest corner of the Duval-Olivia intersection was constructed as part of a restoration project, the geographical limit of which was the centerline of Olivia Street. Although this phase of the restoration work was completed approximately six years before the accident in question, no further restoration was undertaken south of the Olivia Street centerline.
We turn first to the statute, which, the Feldsteins argue, obligated the City, having constructed ramps on the northern side of the intersection, to construct ramps on the southern side. The statute, Section 335.075(3), Florida Statutes (1975), provides:
"Notwithstanding the provisions of any general or special law to the contrary, all plans and specifications for the construction of public streets and roads by any municipality or county shall provide for permanent curb ramps at crosswalks at all intersections where curbs and sidewalks are constructed in order to give handicapped persons and persons in wheelchairs safe access to crosswalks."
The Feldsteins contend that because the statute requires permanent "curb ramps at crosswalks at all intersections where curbs and sidewalks are constructed," not, as it might have required, curb ramps at each street corner, ramps must, at the least, be constructed in pairs, one occupying each end of a crosswalk.[2] The City, looking to other language, argues that the ramps need be constructed only at the place "where the curbs and sidewalks are constructed."
We agree with the Feldsteins. It is apparent, as we will soon discuss, that to provide a handicapped person access to a crosswalk without providing such person egress from the crosswalk is to place the handicapped person in special jeopardy, to create for him a trap. We cannot for one moment believe that the Legislature would enact a statute that, in effect, would require a municipality or county to create such a trap, that is, to build a ramp to a crosswalk which leads to the obstacle of a one-foot curb. City of St. Petersburg v. Collom, 419 So.2d 1082, 1086 (Fla. 1982). Although the statute is susceptible to a contrary construction, we conclude that it must be read to require a ramp at each end *219 of a crosswalk where the curb and sidewalk at one end is redone.[3] Given this statutory direction to install ramps at all crosswalks where curbs and sidewalks are constructed, the City may not excuse its failure to construct the ramp at the southwest corner on the ground that the decision to construct this particular ramp was a planning decision for which it is immune from liability. Cf. A.L. Lewis Elementary School v. Metropolitan Dade County, 376 So.2d 32 (Fla. 3d DCA 1979). "[E]xpress statutory direction to install certain speed zones and traffic and pedestrian control devices at stated locations makes such governmental actions mandatory, and the question of whether or not such shall be installed is thereby removed from the realm of governmental discretion." Id. at 34.
We have already adverted to our view that, even if the statute did not require a ramp on the southwest corner of the Duval-Olivia intersection, the doctrine that "a governmental entity may not create a known hazard or trap and then claim immunity from suit for injuries resulting from that hazard on the grounds it arose from a judgmental, planning level decision," City of St. Petersburg v. Collom, 419 So.2d at 1086, precludes the entry of summary judgment in the City's favor, since, at the least, there is a genuine issue of material fact as to whether a hazard or trap was created.[4] As Collom repeatedly makes clear, a known inherent defect which operates as a trap remains actionable even though the defect was intentionally planned, designed and constructed if the governmental entity fails to adequately warn persons of its existence. Id. at 1086. See also Perez v. Department of Transportation, 435 So.2d 830, 832 (Fla. 1983); Department of Transportation v. Neilson, 419 So.2d 1071, 1077-78 (Fla. 1982).[5] The City concedes that there was no warning whatsoever in the present case. It argues, however, that the hazard was as a matter of law obvious to Feldstein and thus no warning was required. If the City means by "obvious" that Feldstein knew there was no ramp on the southwest corner at the moment he ventured into the crosswalk, Feldstein denies that the curb of the southwest corner was visible to him, and thus, an issue of fact clearly exists. If, on the other hand, the City means that the hazard of being struck by a car while crossing a street is obvious, it misconceives that the hazard it allegedly created is not the ordinary hazard facing the ordinary pedestrian, but rather the hazard of stranding a handicapped person in a street from which he might reasonably take potentially dangerous steps to extricate himself.
The summary judgment for the defendant City is reversed and the cause remanded *220 for further proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] The project was apparently designed and begun in 1976 and completed by the end of 1977. The statute has been renumbered as Section 336.045(3), Florida Statutes (1985).
[2] We need not reach the question whether the statute requires that all corners of the intersection be equipped with ramps when one corner is.
[3] The City's concern that the placing of ramps on one intersection will have the domino effect of requiring it to place ramps on all intersections is exaggerated. In the present case, a ramp on the southwest corner of the Duval-Olivia intersection would satisfy the statute, and no trap would be created at the next intersection.
[4] Traveling south for several blocks on Duval Street sidewalks, Feldstein encountered ramps at both ends of the crosswalks he traversed until he met up with the southwest corner of Olivia. Quite obviously, he could not extricate himself from the street as the non-handicapped pedestrian; his motorized wheelchair was too heavy for his wife to lift over the curb.
[5] The rule in Collom has been recognized in numerous cases. See, e.g., Ralph v. City of Daytona Beach, 471 So.2d 1, 3 (Fla. 1983) (inadequately supervised beach vehicular traffic); Department of Transportation v. Brown, 497 So.2d 678, 680 (Fla. 4th DCA 1986) (dangerous intersection); Kitchens v. Asolo State Theatre, Inc., 465 So.2d 556, 557 (Fla. 1st DCA 1985) (unlit theatre step); Hodges v. City of Winter Park, 433 So.2d 1257, 1260 (Fla. 5th DCA 1983) (protruding manhole cover). Moreover, the cases interpreting Collom, and its companion case, Neilson, uniformly hold that the governmental entity's actual knowledge of injurious effects from the hazardous condition is not a precondition to the applicability of the rule. Rather, the test is the traditional one in negligence cases of whether the governmental entity "knew or should have known" of the injurious potential of the hazard or trap that it was creating. See City of Pensacola v. Stamm, 448 So.2d 39, 42 (Fla. 1st DCA 1984); Hodges v. City of Winter Park, 433 So.2d at 1260; Department of Transportation v. Kennedy, 429 So.2d 1210, 1211 (Fla. 2d DCA 1983); Town of Belleair v. Taylor, 425 So.2d 669, 670 (Fla. 2d DCA 1983).