688 So.2d 440 (1997)
John C. LEONARD, IV, Appellant,
v.
WAKULLA COUNTY, Appellee.
No. 96-1450.
District Court of Appeal of Florida, First District.
February 28, 1997.
*441 Steven P. Glazer, Crawfordville, for appellant.
D. Lloyd Monroe, IV, and James E. Messer, Jr. of Cooper, Coppins & Monroe, P.A., Tallahassee, for appellee.
WOLF, Judge.
John C. Leonard appeals from a final summary judgment entered in favor of Wakulla County (county) in appellant's liability suit. Leonard asserts that the trial court erred in determining that the county was protected by sovereign immunity where appellant was injured while attempting to utilize a ramp providing access to the county courthouse. We determine that the trial court correctly granted summary judgment because the county was not under a duty to upgrade the ramp, and the record conclusively demonstrates that appellant was aware of the dangerous condition posed by the steepness of the ramp.
Appellant is a paraplegic and has been bound to a wheelchair since 1990. In September of 1992, appellant tried to use the Wakulla County Courthouse wheelchair ramp, but the front wheels of his chair became airborne and the chair flipped backwards. Appellant had used the ramp approximately two to six times before the accident. The record also showed that in March of 1991, appellant had sent a letter to the county's building inspector, where appellant pointed out that the courthouse ramp was too steep.
Appellant sued Wakulla County alleging negligence. Appellant's claim was based on (1) the fact that the county failed to repair the ramp after being informed that the ramp was too steep and that it did not comply with the requirements of the Americans with Disabilities Act of 1990 (A.D.A.), and (2) the county failed to warn of a known dangerous condition.
The complaint claimed that the ramp was negligently maintained because it did not comply with the requirements of the A.D.A. as incorporated in Florida Statute 553.501, et seq. According to appellant, the ramp was nearly twice as steep and shorter than what *442 the A.D.A. required. Because section 553.501 requires compliance with the A.D.A., appellant alleged that appellee was obligated to inspect the ramp for compliance and to upgrade the facility. At the hearing, appellant also alleged that the county was aware or should have been aware of the dangerous nature of the ramp and owed a duty to warn citizens or to repair the defect.
In Department of Transp. v. Neilson, 419 So.2d 1071 (Fla.1982), and City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982), the supreme court announced to what extent a governmental entity could be held liable in connection with the operation of capital improvements. In Collom, the court stated,
For the reasons expressed in our Neilson decision, defects inherent in the overall plan for an improvement, as approved by a governmental entity, are not matters that in and of themselves subject the entity to liability. The judicial branch can neither mandate the building of expensive and fail-safe improvements, nor otherwise require expenditures for such improvements. On the other hand, without substantially interfering with the governing powers of the coordinate branches, courts can require (1) the necessary warning or correction of a known dangerous condition; (2) the necessary and proper maintenance of existing improvements, as explained and illustrated in Commercial Carrier [v. Indian River], 371 So.2d 1010 (Fla.1979); and (3) the proper construction or installation and design of the improvement plan, as explained in Neilson, 419 So.2d 1071 (Fla.1982).
Id. at 1085-1086 (emphasis in original).
In Trianon Park Condominium Ass'n, Inc. v. City of Hialeah, 468 So.2d 912, 920 (Fla.1985), the court again explained the extent of governmental liability in this area.
As this Court has made clear in prior cases, there is no liability for the failure of a governmental entity to build, expand, or modernize capital improvements such as buildings and roads. See Perez v. Department of Transportation, 435 So.2d 830 (Fla.1983); City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla.1982); Ingham v. Department of Transportation, 419 So.2d 1081 (Fla.1982); Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982). A governmental entity's decision not to build or modernize a particular improvement is a discretionary judgmental function with which we have held the courts cannot interfere. See Neilson (decision to upgrade roadway). See also Rumbough v. City of Tampa, 403 So.2d 1139 (Fla. 2d DCA 1981) (operation of sanitary landfill); Romine v. Metropolitan Dade County, 401 So.2d 882 (Fla. 3d DCA 1981), review denied, 412 So.2d 469 (Fla.1982) (traffic control decisions).
"On the other hand," the court reasoned,
[O]nce a governmental entity builds or takes control of property or an improvement, it has the same common law duty as a private person to properly maintain and operate the property. See Commercial Carrier (maintenance of traffic control devices); Department of Transportation v. Webb, 438 So.2d 780 (Fla.1983) (maintenance of railroad crossing); Hodges v. City of Winter Park, 433 So.2d 1257 (Fla. 5th DCA 1983), review denied, 444 So.2d 416 (Fla.1984) (maintenance of road); Town of Belleair v. Taylor, 425 So.2d 669 (Fla. 2d DCA 1983) (maintenance of foliage on median); City of Tallahassee v. Elliott, 326 So.2d 256 (Fla. 1st DCA 1975), cert. denied, 344 So.2d 324 (Fla.1977) (maintenance of drainage system).
Id. at 920. Pursuant to this logic, the supreme court held that a governmental entity could be held liable in a slip-and-fall case for failing to properly maintain the floors at a courthouse. City of Jacksonville v. Mills, 544 So.2d 190 (Fla.1989).
The allegations concerning maintenance in the instant case concern the failure to upgrade an existing ramp to statutory standards rather than a situation which involves repair or simple maintenance. Under Collom, the decision to upgrade is a discretionary function for which there is no liability.[1]
*443 The more difficult question here is whether questions of fact exist concerning the county's failure to warn of a known dangerous condition. To state a cause of action for failure to warn of a known dangerous condition, a plaintiff must allege that (1) the government created a dangerous condition, (2) such condition was not readily apparent to someone who could get injured, and (3) the government had knowledge of the condition and failed to take steps to warn the public of the danger. Collom, supra; Tucker v. Gadsden County, 670 So.2d 1053 (Fla. 1st DCA); rev. denied, 679 So.2d 773 (Fla.1996). As to element one, there is no dispute that the county created the condition.
As to element three, there are factual matters in the record which would create a dispute as to whether the county knew of a dangerous condition and failed to warn. Appellant's testimony reflects that he sent a letter to the county building inspector stating that the courthouse ramp was too steep. The record also shows that there may have been other people who complained about the county's ramp design or who may have been injured in appellee's ramp. Further, when the Congress mandated that existing barriers to handicap access were to be eliminated, appellee would have been put on notice of the ramp's potential danger if it had inspected its ramp for A.D.A. compliance. However, appellee denied any knowledge of the alleged defects. In sum, in the present case, genuine issues of material fact exist as to whether appellee knew or should have known of the dangerous condition of the ramp.
As to the second Collom element, while a county may be liable for failure to warn of a known dangerous condition, case law dictates that a prerequisite for imposing liability under this theory is the plaintiff's lack of knowledge of the hidden trap. Greene v. State Dep't of Transp., 465 So.2d 560 (Fla. 1st DCA 1985). See also Wright v. State Dep't of Agriculture, 540 So.2d 830 (Fla. 1st DCA 1988), rev. denied, 544 So.2d 201 (Fla.1989). If a danger is open and notorious, the government has no duty to warn. Masters v. Wright, 508 So.2d 1299 (Fla. 4th DCA 1987). Thus, evidence of a dangerous condition that is readily apparent to the public will not generally support an exception to the doctrine of sovereign immunity. Greene v. State Dep't of Transp., 465 So.2d 560 (Fla. 1st DCA 1985).
In many cases, the plaintiff's knowledge of a dangerous condition or the determination of whether a condition is readily apparent, however, will involve a question of fact which will preclude the entry of a summary judgment. Normally, if a plaintiff has traveled in an area where there is a defect, there is no duty to warn. Tucker v. Gadsden County, 670 So.2d 1053 (Fla. 1st DCA), rev. denied, 679 So.2d 773 (Fla.1996). In Tucker, however, while the facts demonstrated that the plaintiff had driven on the road in the past, there was evidence that distractions could occur on the roadway which would obviate the plaintiff's knowledge of the condition, and evidence that the condition would not necessarily be readily apparent to any person who had driven on the road.
At the time of the accident, however, Mrs. Tucker was confronted with the headlights of a car which prompted her to move toward the edge of the road. The sergeant and a highway and traffic engineer averred that the allegedly dangerous condition would not be readily apparent to motorists.
Id. at 1055. In that case, we held that summary judgment would be inappropriate.
In the instant case, there are no such circumstances which would create an issue of material fact concerning whether the alleged defect was readily apparent to the general public or whether the plaintiff had knowledge of the known dangerous condition. The ramp was open and visible, the plaintiff has used the ramp several times in the past and, in fact, had written to the county to advise them of the dangerous condition. We, therefore, determine under existing case law, the trial court properly granted summary judgment for the county.
*444 JOANOS, J., concurs.
VAN NORTWICK, J., dissenting with written opinion.
VAN NORTWICK, Judge, dissenting.
Because I find genuine issues of material fact both concerning whether the dangerous condition inherent in the design of the county's ramp was readily apparent to the public and concerning whether appellant knew of the extent of the danger posed, I conclude that it was error to grant summary judgment in the instant case. Accordingly, I respectfully dissent.
I agree with the majority opinion that, under Department of Transp. v. Neilson, 419 So.2d 1071 (Fla.1982), and City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla.1982), while a governmental entity is not subject to liability for an inherent defect in its plan for a construction project, Neilson, 419 So.2d at 1077-78,
once a governmental entity creates a known dangerous condition which may not be readily apparent to one who could be injured by the condition, and the governmental entity has knowledge of the presence of people likely to be injured, then the governmental entity must take steps to avert the danger or properly warn persons who may be injured by that danger.
Collom, 419 So.2d at 1086 (emphasis in original). Further, as noted by the Third District in Feldstein v. City of Key West, 512 So.2d 217, 219 n. 5 (Fla. 3d DCA 1987) (citations omitted):
the cases interpreting Collom, and its companion case, Neilson, uniformly hold that the governmental entity's actual knowledge of injurious effects from the hazardous condition is not a precondition to the applicability of the rule. Rather, the test is the traditional one in negligence cases of whether the governmental entity "knew or should have known" of the injurious potential of the hazard or trap that it was creating.
I also agree that if the danger is open, notorious, and readily apparent to the public, there is no duty to warn. Barrera v. State Dep't of Transp., 470 So.2d 750 (Fla. 3d DCA), rev. denied, 480 So.2d 1293 (Fla.1985). Here, however, there are no facts demonstrating objectively whether the condition was readily apparent to the public and there are questions of material fact as to whether the dangerous condition was known to appellant.
First, I believe the majority has erroneously blended what I see as two separate issues: whether the dangerous condition was readily apparent to the public and whether the injured party had actual knowledge of the dangerous condition. Although these issues may be closely related in jurisdictions recognizing the defenses of implied assumption of risk and contributory negligence, see Ernest H. Schopler, Annotation, Modern Status of The Rule Absolving a Possessor of Land of Liability to Those Coming Thereon for Harm Caused by Dangerous Physical Conditions of Which the Injured Party Knew and Realized the Risk, 35 A.L.R.3d 230, §§ 5 and 6 (1971), in a comparative negligence state such as Florida, these issues serve separate purposes and involve distinct considerations. The former issuewhether the dangerous condition was obvious to the publicdetermines whether the governmental entity has a duty to warn the public of the dangerous condition. The standard for determining whether a condition was open and readily apparent is an objective one. The question is not whether appellant knew of the danger, but whether the danger was obvious to "a reasonably prudent person exercising due care." Houk v. Monsanto Co., 609 So.2d 757, 759 (Fla. 1st DCA 1992). The latter issuewhether the appellant actually knew of the danger"presents only an issue of comparative negligence that does not completely bar recovery...." Hancock v. Department of Corrections, 585 So.2d 1068, 1071 (Fla. 1st DCA 1991); see also Ayers v. City of Miami, 578 So.2d 302, 304 (Fla. 3d DCA 1991).
Here, there is no evidence as to whether the danger was readily apparent to the public. As a result, since it cannot be said that there is a complete absence of any genuine issue of material fact as to the open and obvious nature of the alleged danger, summary judgment should have been precluded. *445 Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985).
Further, disputed facts remain as to appellant's knowledge of the dangerous condition of the ramp. It is undisputed that appellant had used the ramp to gain access to the courthouse "probably anywhere from two to six times" and that he had previously experienced "some difficulty" in using the ramp. Appellant contends, however, that, while he knew it was difficult to negotiate the ramp in his wheelchair, he was unaware that the ramp was so steep it could cause his wheelchair to flip backwards. The hazard allegedly created here is not a ramp that can be safely negotiated only with difficulty, but a ramp that poses a dangerous hidden trap to persons in wheelchairs. Under these circumstances, whether appellant perceived the dangerous condition complained of is a disputed question of fact for the jury. Feldstein, 512 So.2d at 219; Lynch v. Brown, 489 So.2d 65, 66 (Fla. 1st DCA 1986).
In addition, the facts here present the question of whether the county should reasonably have expected persons in wheelchairs, such as appellant, to encounter even a known and obvious danger. Because a wheelchair-bound person having business in the courthouse could only enter the courthouse by use of the allegedly dangerous ramp, to such a person the advantage of such an encounter might outweigh the risks. Ahl v. Stone Southwest, Inc., 666 So.2d 922, 924 (Fla. 1st DCA 1995); see also Restatement (Second) of Torts § 343A, comment f. That appellant may have had no choice but to undertake such risk or forego his business with his government, also raises questions of fact which go to the issue of comparative negligence. Ahl, 666 So.2d at 924.
For these reasons, therefore, I would reverse and remand for further proceedings.
NOTES
[1] There was no allegation in the instant case concerning the failure to meet existing standards at the time the ramp was constructed. Such an allegation may have mandated a different result. Feldstein v. City of Key West, 512 So.2d 217 (Fla. 3d DCA 1987).