STEVENSON, J.
This is the companion appeal to Russo v. Lorenzo, 67 So.3d 1165 (Fla. 4th DCA 2011). These appeals stem from a wrongful death suit filed after police officer Orestes Lorenzo died as the result of injuries sustained from a car crash that resulted in his car hitting the median, rolling over, and striking a palm tree. The Florida Department of Transportation (FDOT) was among the named defendants and, in this appeal, challenges the judgment entered following a jury’s determination that it was fifteen percent at fault for Lorenzo’s injuries. While FDOT raises a number of issues on appeal, we find that its claim that the trial court should have directed a verdict in its favor on sovereign immunity grounds is dispositive and requires reversal. We write solely to address this issue.
Evidence at trial established that, as the result of the collision between Lorenzo’s car and a car driven by Natasha Russo, the tires of Lorenzo’s car struck the median on Pines Boulevard and the car began to roll, ultimately striking a palm tree planted in the median. The median was designed by an engineering firm hired by the City of Pembroke Pines. The design firm’s plans utilized an F curb along the median, reflected a design speed of 50 miles per hour, and called for the planting of royal palm trees in the median. As FDOT owned the median and was responsible for its design parameters, the design firm’s plans were submitted to FDOT for approval. There was evidence that FDOT policies precluded the use of an F curb at design speeds in excess of 45 miles per hour. Such limitation was based upon the risk of roll-over when a car strikes a curb. After changing the design speed to 45 miles per hour, FDOT approved the plans.
In 1993, some years later, FDOT conducted a speed study on Pines Boulevard. The study demonstrated that the average speed of eighty-five percent of the drivers was 53.1 miles per hour and, in the surrounding seven-mile stretch, eighty-five percent of the drivers were travelling at speeds in the mid-50s. Experts testified that a large differential between the posted limit and the speed of most drivers creates a hazard, and speed zoning standards provide that the posted speed limit shall not be more than eight miles per hour less than the average speed of the eighty-fifth percentile. FDOT thus raised the speed limit to 50 miles per hour. The F curbs and palm trees remained.
In the suit that followed Lorenzo’s death, the plaintiffs alleged that FDOT was negligent in approving the design plans, which called for an F curb and the planting of palm trees, alleging that the same was contrary to prevailing design standards, and negligent in later approving an increase in the speed limit and failing to remove the F curb and palm trees. We find the alleged negligent activities in this case were planning-level functions for which FDOT is immune from tort liability.
Beginning with its decision in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1020-22 (Fla.1979), our supreme court has drawn a distinction between operational activities for which the State does not enjoy sovereign immunity *1164 and planning or judgmental government functions for which the State does enjoy sovereign immunity. An operational act has been described as “ ‘one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented.’ ” City of Pinellas Park v. Brown, 604 So.2d 1222, 1226 (Fla.1992) (quoting Kaisner v. Kolb, 543 So.2d 732, 737 (Fla.1989)). In contrast, a planning or judgmental act involves “ ‘an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning.’ ” Id.
Design defects inherent in the overall plan are to be afforded sovereign immunity. See Dep’t of Transp. v. Neilson, 419 So.2d 1071 (Fla.1982); see also City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla.1982).[1] In Neilson, an intersection collision case, the supreme court held the government could not be liable for designing an intersection with alleged dangerous angles, for failing to install adequate traffic control devices, or for failing to upgrade the intersection as all were planning level decisions. The court cited the construction of a two-lane road where traffic use indicated four lanes were necessary and the construction of a curved road where a straight road would be more appropriate as further examples of inherent defects for which there could be no government liability, writing that “the decision to build or change a road, and all the determinations inherent in such a decision, are of the judgmental, planning-level type.” 419 So.2d at 1077 (emphasis added). And, in Ingham v. State, Department of Transportation, 419 So.2d 1081 (Fla.1982), the supreme court affirmed the dismissal of a complaint where the plaintiff alleged DOT was negligent “in constructing a road with a curve, in determining the position, shape and size of a median, and in failing to provide adequate traffic signals,” finding such acts were planning level functions. Id. at 1082 (emphasis added).
In the years that have followed Neilson and Ingham, Florida’s appellate courts have held that the following are planning level decisions for which the State is afforded sovereign immunity: decisions regarding installation of a flashing beacon and rumble strips, see Department of Transportation v. Konney, 587 So.2d 1292 (Fla.1991); decision whether to install a barrier between the northbound and southbound lanes, see Cygler v. Presjack, 667 So.2d 458 (Fla. 4th DCA 1996); decision to construct bridge with unprotected pedestrian walkway, see Masters v. Wright, 508 So.2d 1299 (Fla. 4th DCA .1987); and decision to modify plans and place concrete traffic signal pole in a location other than one called for in original plans (but misplacement of pole and resulting failure to follow the plans was an operational activity), see Scott v. Florida De *1165 partment of Transportation, 752 So.2d 30 (Fla. 1st DCA 2000). And, in Greene v. Department of Transportation, 465 So.2d 560 (Fla. 1st DCA 1985), the First District held that claims that the road did not meet design standards in that grades were too steep for a 55-mph speed limit, there was inadequate vertical curve length, and inadequate stopping distance were not actionable as design defects, but appellants could adequately state a claim under the theory that DOT had created a known dangerous condition and failed to warn or correct. Id. at 561 n. 1, 562.
We hold that the alleged acts of negligence in the instant case are the type of planning level functions afforded sovereign immunity by our supreme court and the cited authorities. Decisions concerning the angles of an intersection or the position, shape and size of a median, or whether to put a cover over a drain pipe all involve a deliberate, considered choice by the government agency concerning the “best” way in which to proceed with the project design. The negligence alleged here similarly involves the exercise of discretionary, design choices, i.e., the type of curb, the type of vegetation permitted in the median, whether upgrade and/or alteration of the intersection was required after the increase in speed limit. As the supreme court held in Neilson, “the decision to build or change a road, and all the determinations inherent in such a decision, are of the judgmental, planning-level type.” 419 So.2d at 1077 (emphasis added).
In so holding, we are cognizant of Ferla v. Metropolitan Dade County, 374 So.2d 64 (Fla. 3d DCA 1979). There, a car struck a curb, became airborne, and was propelled into the plaintiffs lane of travel, causing a collision. The plaintiff alleged, among other things, that Dade County was negligent by designing, constructing, and maintaining a median that causes drivers to lose control and become airborne. The Third District held the design of the median was an operational function for which there was no sovereign immunity, likening the median design to the maintenance of traffic control devices. Id. at 67. In Neilson, our supreme court acknowledged Ferla, characterizing it as a “difficult case to explain,” see 419 So.2d at 1077; and, while Neilson did not overrule Feria, our supreme court subsequently held, in Ingham, that there was sovereign immunity for alleged negligence in determining the position, shape, and size of a median, see 419 So.2d at 1082. Under these circumstances, we decline to find conflict or rely upon Feria to find an absence of sovereign immunity in the instant case.
The judgment against FDOT is accordingly reversed and the matter remanded for the entry of judgment in favor of FDOT.

Reversed and Remanded.

TAYLOR and GERBER, JJ., concur.

. In Neilson and Collom, the supreme court also held that when a governmental entity creates a known dangerous condition that is not readily observable to those who may be injured by such condition, a duty arises at the operational level to warn of or protect the public from the known danger and the failure to fulfill this duty will give rise to a cause of action. Neilson, 419 So.2d at 1077-78; Collom, 419 So.2d at 1083. This theory of liability, i.e., that FDOT had created a known dangerous condition, not readily apparent to motorists, and had failed to warn or protect the public from the known danger, was submitted to the jury via a special interrogatory in the verdict form. And, while the jury found there was negligence on the part of FDOT that was a legal cause of Lorenzo's death, it also found FDOT did not create such a known dangerous condition. Such theory therefore cannot serve as a basis to avoid sovereign immunity or otherwise uphold the verdict against FDOT.