STEVENSON, J.
This is the companion appeal to Florida Department of Transportation v. City of Pembroke Pines, 67 So.3d 1162 (Fla 4th DCA 2011). These appeals arise from a wrongful death suit filed after City of North Miami Beach police officer Orestes Lorenzo died from injuries sustained after his car collided with a vehicle driven by Natasha Russo and owned by William Russo. The jury found Lorenzo thirty percent at fault for the collision, Natasha Russo fifty-five percent at fault and Florida Department of Transportation (FDOT) fifteen percent at fault, and judgment was ultimately entered against the Russos and FDOT. The jury awarded $11,537,700 in damages; $10 million of that figure represents pain and suffering. In this appeal, the Russos challenge the jury verdict on a number of grounds. We find that only one of these arguments — their claim that the trial court erred in refusing to permit the defendants to elicit testimony concerning the payments the wife was receiving from the City of North Miami Beach — warrants relief on appeal, as to damages only, and write to address that issue.
*1167 The plaintiffs called an economist to testify on the subject of economic damages, who opined that, reduced to present day dollars, the plaintiffs had suffered between $1.5 and $1.8 million in lost support. On direct examination, the economist testified the economic losses to the plaintiffs included the decedent’s income, his projected income, and his projected pension had he lived. In reaching this opinion, the expert estimated the decedent would have worked until age 62½, at which time he would have had thirty years service with the City of North Miami Beach (“City”) and a ninety percent pension. During his testimony, the expert commented that the decedent was not vested in the pension when he died. At a side bar, the defendants asserted that it was undisputed that the decedent’s wife was receiving a benefit from the City, representing about sixty percent of the decedent’s salary at the time of his death (about $84,000 per year) and that, for purposes of determining the economic losses resulting from the death, this City benefit was fairly characterized as a “pension.” The defendants argued the plaintiffs had unfairly and misleadingly suggested to the jury that the plaintiffs had wholly lost the decedent’s pension and thus the defendants should be permitted to cross-examine the expert on the subject, putting evidence of the receipt of the benefit before the jury so as to prevent any double recovery by the wife. The plaintiffs insisted the benefit was not a pension, but was a death benefit akin to life insurance and there was no risk of double recovery. The trial court refused to permit the defendants to put evidence of the wife’s receipt of the City benefit before the jury.
Section 768.76, Florida Statutes (2009), requires that the damages awarded to compensate a claimant for losses sustained be reduced by the total amounts paid for the benefit of the claimant, or otherwise available to the claimant, from all “collateral sources.” “Collateral sources” is a term of art defined, in part, as follows under the relevant statutory provisions:
(2) For purposes of this section:
(a) “Collateral sources” means any payments made to the claimant, or made on the claimant’s behalf, by or pursuant to:
1. The United States Social Security Act, ... any federal, state, or local income disability act; or any other public programs providing medical expenses, disability payments, or other similar benefits....
2. Any health, sickness, or income disability insurance; automobile accident insurance that provides health benefits or income disability coverage; and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by her or him or provided by others.
[[Image here]]
4. Any contractual or voluntary wage continuation plan provided by employers or by any other system intended to provide wages during a period of disability.
§ 768.76(2)(a)1.-2., 4., Fla. Stat. (emphasis added).
“ ‘As a rule of evidence, the collateral source rule prohibits the introduction of any evidence of payments from collateral sources.’ ” Benton v. CSX Transp., Inc., 898 So.2d 243, 245 (Fla. 4th DCA 2005) (quoting Gormley v. GTE Prods. Corp., 587 So.2d 455, 457 (Fla.1991)). The rule is based on the rationale that collateral source evidence may mislead the jury on the issue of liability or lead the jury to believe the plaintiff is trying to obtain multiple recoveries for the same injury. Gormley, 587 So.2d at 458. The collateral source rule does not, however, bar the admission of evidence of collateral source payments where such evidence is relevant *1168 to liability or rebuts a party’s theory of the case, see Citizens Prop. Ins. Corp. v. Ashe, 50 So.3d 645, 652-53 (Fla. 1st DCA 2010), and Rease v. Anheuser-Busch, Inc., 644 So.2d 1383, 1386-87 (Fla. 1st DCA 1994), or where the plaintiffs evidence may mislead the jury about the plaintiffs present financial circumstances, see State Farm Mut. Auto. Ins. Co. v. Gordon, 712 So.2d 1138, 1139-40 (Fla. 3d DCA 1998).
Applying these principles to the instant case, if the City benefit is fairly characterized as a pension, then the defendants should have been permitted to cross-examine the economist concerning the benefit. Such testimony would have been relevant to demonstrate error or shortcomings in the economist’s loss of support damages as his calculations were premised on the idea that, due to the decedent’s death, the plaintiffs had wholly lost this benefit. If, on the other hand, the benefit is akin to life insurance, the wife’s receipt of the same was irrelevant and should not have been placed before the jury. The admissibility of evidence concerning the benefit thus turns on its character or nature.
Officer Lorenzo was a “participant” in the City of North Miami Beach Retirement Plan for Police Officers and Firefighters of City of North Miami Beach. The comprehensive retirement plan includes sections addressing the benefit payable to a police officer and his beneficiary in a variety of circumstances, including benefits paid “other than on retirement.” See City of N. Miami Beach, Fla., Ordinance 89-18 (Mar. 15, 1990). Section 6.01 addresses the retirement benefit payable to an officer and his beneficiary if he retires at his normal retirement date and thereafter dies. Section 6.02 addresses the retirement benefit in the event the officer takes early retirement and thereafter dies. Section 6.03 addresses the retirement benefit in the event of the officer’s disability and death subsequent to disability retirement. Section 6.04(a) addresses the retirement benefit in the event the officer’s services are terminated for any reason other than his death. Sections 6.04(b) and (c), as amended, address the benefit payable in the event of the officer’s death on or before his normal retirement date while not in the line of duty and while in the line of duty, respectively. See City of N. Miami Beach, Fla., Ordinance 2005-6 (Apr. 5, 2005).
Officer Lorenzo’s wife was being paid pursuant to section 6.04(c), which provides as follows:
§ 6.04 BENEFITS OTHER THAN ON RETIREMENT
[[Image here]]
(c) Benefit Payable in Event of Death On-Duty or In Line of Duty, On or Prior to Normal Retirement Date.
(1) Effective July 1, 2004, the monthly retirement income payable upon the death of a participant who is survived by a spouse and/or dependent child(ren), and whose death occurs while the participant is on duty or in the line of duty shall be the greater of (i) the monthly retirement income determined in accordance with Subsection 6.04(b) above, [entitled “Benefit Payable in Event of Non-Service Related Death on or Prior to Normal Retirement Date while in Service”] and (ii) 60% of the participant’s final monthly compensation at the date of the death of the participant. Said retirement income shall be payable to the participant’s surviving spouse.... If the total benefits paid under this subsection are less than the total contributions made to the Plan by the Participant, then the balance shall be paid to the Participant’s designated beneficiary.
City of N. Miami Beach, Fla., Ordinance 2005-6 (Apr. 5, 2005).
*1169 Unlike life insurance, which is procured by the payment of a premium, the benefit created by the City’s retirement plan is paid in consideration of the decedent’s service to the City and participation in the retirement plan — much like a pension. Section 6.04(c), the subsection pursuant to which the benefit was being paid the wife, speaks in terms of the “monthly retirement income” payable to the beneficiary and provides a methodology for calculating the amount to be paid. And, the provisions of section 6 as a whole make it clear that, in the event of an officer’s death prior to his normal retirement date, the sole “monthly retirement” benefit to be paid by the City is that set forth in sections 6.04(b)[death prior to retirement and not in line of duty] and (c)[death prior to retirement and in line of duty]. The benefits provided by sections 6.04(b) and (c) are not in addition to some other pension or retirement income payable to the beneficiary under the plan. Consequently, the wife could not have been entitled to receive the benefit paid pursuant to section 6.04(c) and the full value of the pension her husband would have received had he lived and retired at normal retirement age.
We recognize that the preamble to the Ordinance enacting the section 6.04(c) amendment stated that “the City Council has determined that it would be in the best interest of the participants of the Retirement Plan to provide a minimum death benefit for the beneficiaries of participants who die while on duty or in the line of duty....” Id. (emphasis added). Although described as a “death benefit,” we reject the notion that the monthly payment to the wife, derived from Officer Lorenzo’s participation in the retirement plan, is equivalent to “life insurance” within the meaning of the collateral source statute. To the extent the payments the wife received were paid in lieu of Officer Lorenzo’s anticipated pension benefits at normal retirement, there was no “loss” of this source of support by the wife. As such, the defendants should have been permitted to put evidence of the benefit to the jury through its cross-examination of the plaintiffs’ economist. To remedy the inability of the defendants to do so at this stage of the proceedings, we remand the case to the trial court with directions that the judgment against the Russos be reduced by the value of the City of North Miami Beach benefit being received by the wife.[1]
Accordingly, we affirm the liability verdict in favor of the plaintiffs and against the Russos, but remand the case for the entry of a corrected judgment on damages consistent with this opinion.

Affirmed in Part; Reversed in Part; and Remanded.

TAYLOR and GERBER, JJ., concur.

. During a proffer to the court, the economist put the value of the benefit, reduced to present value dollars, at $1,222,636.